# THE STATE v. CLAUDE TEETER, Appellant.

### Division Two, February 6, 1912.

1. **INFORMATION: Misjoinder: Seduction: Carnal Knowledge.** If the State, before the court passes on a motion to quash an information, charging seduction under promise of marriage in one count and unlawful carnal knowledge in another, abandons the charge of unlawful carnal knowledge and elects to go to trial on the charge of seduction, the court does not err in overruling the motion to quash.

2. **STATEMENT: Improper Remarks: Seduction.** A remark by the prosecuting attorney, in a prosecution for seduction under promise of marriage, in his opening statement to the jury, that "she was seduced February 28, 1909; on December 8, 1909, the child was born," was not improper.

3. **IMPROPER REMARKS OF ATTORNEY: Must be Preserved in Bill.** Remarks of the prosecuting attorney, to be considered on appeal, must be preserved in the bill of exceptions. To set them out in a motion for a new trial is not sufficient.

4. **CRITICISM OF ATTORNEYS BY COURT.** Scolding remarks addressed by the court to defendant's attorneys, in no wise indicating how he thought the case should be decided, while improper, cannot be said to so prejudice the minds of the jurors against defendant as to authorize a reversal of the judgment.

5. **INSTRUCTIONS: Should All be Considered Together.** If the instructions given for the State, when read in connection with those given for defendant, correctly define the offense for which defendant is on trial, the judgment will not be reversed because of alleged errors in those given for the State.

6. **EVIDENCE: Impeachment: Independent Crime.** An independent crime is not competent to impeach defendant or to establish his bad reputation.

7. ——: **Independent Crime.** Testimony which places upon defendant the burden of defending himself against a crime not mentioned in the indictment, is incompetent. So that where defendant was on trial under an information charging him with seducing one girl under a promise of marriage, testimony of another girl to the effect that about the same time he seduced her under a promise of marriage, is incompetent and prejudicial, and cannot be brought in for the purpose of impeaching defendant's reputation or otherwise.

8. ——: ——: **Seduction: Impeachment: Prejudicial Question.** Defendant was on trial for the seduction under promise

of marriage of a girl of good repute under eighteen years of age, and had testified, and thereupon the State, in rebuttal, in an attempt to prove that defendant's reputation for morality was bad,. introduced another girl, who testified that she was unmarried, that she was eighteen years of age, that her child was present, that defendant's reputation was bad, and was then asked if defendant did not, just prior to the time he is charged with seducing prosecutrix, seduce her under a promise of marriage. This question was ruled out. *Held*, that the testimony and question were highly prejudicial and reversible error.

9. ————: Seduction: Corroboration. The evidence of prosecutrix in the trial of a defendant for seduction under promise of marriage, must be corroborated to the same extent as the evidence of the principal witness in a prosecution for perjury; but this corroboration need not be by a witness who heard the promise of marriage, but may be by such conduct of the parties as usually accompanies a contract of marriage, or by statements of defendant to third parties. But the promise to marry must precede the seduction, and where the entire courtship was conducted at the home of prosecutrix's aunt, a few miles from her own home, and she testifies that defendant, during his second visit to her, proposed marriage, that she accepted, and an hour or so later he seduced her, under said promise; and where there was no preparation for marriage, and the only evidence of a promise was statements made by defendant to her aunt, after the promise is alleged to have been made, and those statements were of such a character as indicated an intention to marry at sometime with some undisclosed girl, the evidence of corroboration is, under the peculiar facts of the case, insufficient.

10. COURTS: Sittings to be Public. The sittings of every court must be public, and every person may freely attend same.

Appeal from Grundy Circuit Court.—*Hon. Geo. W. Wanamaker*, Judge.

REVERSED AND REMANDED.

*Hewitt & Hewitt* for appellant.

(1) The motion to quash the information should have been sustained. (2) It was highly improper and prejudicial for the prosecuting attorney in his opening statement to state "She was seduced on February 28, 1909; on December 8, 1909 the child was

born." (3) The defendant objected to the following statement of the prosecutrix, "Well, when he first tried to seduce me, I would not consent, and I told him I did not think it was right, and he so fully made me believe, and said we were going to be married, and wouldn't be anything of it," on the ground that it was a conclusion and not responsive and defendant moved that it be stricken out. Which objection and motion was overruled. The answer was not the statement of a fact, was the statement of a conclusion of the witness, and was not responsive to the question propounded. State v. Foley, 144 Mo. 618; State v. Eisenhour, 132 Mo. 145; Waddell v. Railroad, 113 Mo. App. 686. (4) The following question was propounded to Mabel French, by prosecuting attorney: "Q. Now I will ask you if prior to the 28th day of February, 1909, and just prior, if he did not seduce you under a promise of marriage?" The defendant objected for the reason that it was wholly improper, and only calculated to prejudice the jurors' minds against the defendant, and he is not on trial for that, and moved to strike it out. The court refused to strike it out. State v. Coleman, 186 Mo. 158; State v. Beckner, 194 Mo. 295; State v. Richardson, 194 Mo. 342; State v. Eisenhour, 132 Mo. 145. There were no circumstances in evidence which usually attend an engagement of marriage. Nowhere can there be found in the record any evidence of any statement or admission that he was engaged to be married to Ruth Bosely, outside of Ruth's evidence. State v. Reeves, 97 Mo. 668; State v. Eisenhour, 132 Mo. 141; State v. McCassey, 104 Mo. 644; Zabriskie v. State, 43 N. J. L. 640; Rice v. Coin, 100 Pa. St. 28; State v. Drew, 179 Mo. 324. (5) It will not do to say that instructions on the part of the State are cured by those on the part of the defendant. That is assuming too much for the average juror. (6) The court failed and neglected to instruct the jury to what constituted corroboration, or define the

word corroborate. State v. Reeves, 97 Mo. 668; 3 Ency. Ev. 674; State v. McClaskey, 104 Mo. 644. (7) The testimony of the prosecutrix shows that the promise was conditioned upon pregnancy, and was therefore insufficient under the law. People v. Van Alstgue, 144 N. Y. 361; State v. Adams, 25 Ore. 172. (8) There was absent any corroborating evidence of the promise of marriage testified to by the prosecuting witness. There was an equipoise of oath against oath, and there can be no conviction. State v. Primm, 98 Mo. 373; State v. Brown, N. J. L. 414. The corroboration under the statute must be to the same extent as the principal witness in prosecutions for perjury. State v. Davis, 141 Mo. 522; State v. Primm, 98 Mo. 368; State v. Reeves, 97 Mo. 668; State v. Hill, 91 Mo. 423.

*Elliott W. Major,* Attorney-General, and *Campbell Cummings,* Assistant Attorney-General, for the State.

(1) After the motion to quash was filed by appellant, the State entered a *nolle pros* as to the second count, and thereupon the trial court overruled appellant's said motion, as the sole ground of his motion to quash was a misjoinder of offenses; the *nolle pros* cured the alleged error complained of. State v. Sharpless, 212 Mo. 176. (2) Appellant, in his brief, claims an objection on the ground that the answer was conclusive and not responsive to the question. It will readily be seen that the second ground not being responsive is not in the bill, and was not made at the time of the objection. All three of appellant's cases cited in his brief are on the objection of not being responsive. Appellant has cited no case showing that it was reversible error on the ground of his objection, namely, that it was "a conclusion of the witness; let her state what was said." If it is a conclusion, it is true that it is presumptively prejudicial, but it is

manifest by the disclosures of the entire record that the opinion of the prosecutrix "that appellant had tried to seduce her," could not have reasonably resulted in any harm to appellant, and so it cannot be treated as prejudicial by this court. State v. Brown, 188 Mo. 464; State v. Coleman, 186 Mo. 160; State v. Cummings, 189 Mo. 643; State v. Lovell, 235 Mo. 343. If it is merely an opinion of the witness, it still might have been proper as such, as the seduction and the arts and blandishments may be partly by the manner as well as words, and in such a case the opinion of the witness would be competent, as she was qualified from opportunity and observation. 17 Cyc. 36; State v. Williamson, 106 Mo. 171; Fulton v. Railroad, 125 Mo. App. 245; Waddell v. Railroad, 213 Mo. 17; Partello v. Railroad, 217 Mo. 645; State v. Nieuhaus, 217 Mo. 332; Merritt v. Tel. Co., 215 Mo. 308; Lindsay v. Kansas City, 195 Mo. 181; Hartpence v. Rogers, 143 Mo. 630. (3) As to the alleged improper remarks of the prosecuting attorney in his opening statement, it is sufficient to state there is no such ground in appellant's motion for new trial, and, therefore, the same have not properly been preserved. State v. McKee, 212 Mo. 149; State v. Scott, 214 Mo. 261; State v. Wiese, 136 S. W. 240; State v. Brannon, 206 Mo. 636; State v. Marshall, 36 Mo. 400; State v. Hultz, 106 Mo. 41; State v. Grant, 144 Mo. 66. As to the prosecuting attorney's remarks in his closing argument to the jury, it is sufficient to state that none of the argument appears in the bill of exceptions, and, therefore, has not been properly preserved. State v. Brooks, 202 Mo. 118; State v. Chenault, 212 Mo. 137; State v. Sassaman, 214 Mo. 736; State v. Baker, 209 Mo. 451; State v. DeWitt, 191 Mo. 58. Appellant complains of the following asked of a State's witness in rebuttal: "Q. Now, I will ask you if prior to the 28th day of February, 1909, and just prior, if he did not seduce you under the promise of marriage?" It

will be observed from an examination of the bill of exceptions, that no request was made to rebuke the State's attorney for propounding the question, and no request made by appellant that the court should direct the jury to disregard it. The court treated his motion as directed towards the answer of the witness, and appellant's counsel did nothing to correct the erroneous impression of the trial court. The case of State v. Coleman, 186 Mo. 158, is directly in point. (4) The corroboration of the promise of marriage need not be of such force as would prove the fact of itself independently of the prosecutrix's testimony, nor need the corroborating circumstances be equal to a second witness (State v. Hill, 91 Mo. 423; 35 Cyc. 1363, 1364) or equal or tantamount to those testified to by the prosecutrix. State v. Davis, 141 Mo. 522. The admissions of appellant that he had promised to marry the prosecutrix are corroborative. The statute does not require the testimony of two witnesses. State v. Sublett, 191 Mo. 163; State v. Whitworth, 126 Mo. 573; State v. Phillips, 185 Mo. 187; State v. Sharp, 132 Mo. 165; State v. Marshall, 137 Mo. 463. The language used in making the promise of marriage is not material, provided it was intended to convey that meaning and was so understood by the prosecutrix. 35 Cyc., 1336, 1337; State v. Sortviet, 100 Minn. 12; State v. Brinkhaus, 34 Minn. 285; State v. Hill, 91 Mo. 423; State v. McCaskey, 104 Mo. 646; State v. Eisenhour, 132 Mo. 147; State v. Davis, 141 Mo. 525.

BROWN, J.—Defendant was convicted on a charge of seducing and debauching, under promise of marriage, one Ruth Bosley, an unmarried female. From a judgment fixing his punishment at three years in the penitentiary, he appeals.

The information contained two counts; in one, defendant is charged with seducing prosecutrix under

promise of marriage; and in the other, with having unlawful carnal knowledge of said prosecutrix.

According to the evidence of prosecutrix, her entire courtship with defendant was conducted at the home of her aunt, Mrs. Sarah Call, who resided a few miles from the home of prosecutrix. She testified that on February 28, 1909, during his second visit to her, defendant proposed marriage; that she accepted, and an hour or so later, he seduced her under said promise. He continued his visits for about four weeks, when, upon learning that she was pregnant, his visits ceased. A child was born to her in December, 1909, which she says was the product of her intercourse with defendant.

There was substantial evidence tending to prove that prosecutrix was under eighteen years of age and of good repute when the alleged seduction took place; and there was also substantial evidence indicating that she was unchaste before defendant began keeping company with her.

Defendant was sworn as a witness in his own behalf, and in rebuttal the State introduced evidence tending to prove that his reputation for morality was bad.

Such additional evidence relating to the alleged promise of marriage as will be necessary for a full understanding of the case, will be noted in our opinion.

Defendant seeks a reversal of the judgment on the following grounds:

1. Because the court erred in overruling defendant's motion to quash the information on the ground that it contained a misjoinder of causes of action.

2. Alleged erroneous instructions on the part of the State.

3. Improper remarks of the prosecuting attorney.

4.   Improper remarks of the court to defendant's attorneys.

5.   Failure of the court to instruct the jury upon all the issues of law arising in the case.

6.   That the verdict of the jury is not founded upon the evidence and the law of the case; but was rendered by reason of the passion, prejudice and sympathy of the jury.

## OPINION.

I.   The court did not err in refusing to quash the information on account of the alleged misjoinder, for the reason that before the court passed on the motion to quash, the State abandoned the charge of unlawful carnal knowledge and elected to go to trial only on the charge of seduction. The defendant was not prejudiced by the existence in the information of a count which had been abandoned and upon which he was not tried. His conviction of seduction is equivalent to an acquittal of the charge of unlawful carnal knowledge.

II.   Numerous alleged remarks of the prosecuting attorney are complained of; one of them being that in his opening statement to the jury he said of the prosecutrix: "She was seduced on February 28, 1909; on December 8, 1909, the child was born." We fail to see the impropriety of this remark. It merely referred to certain facts which the State expected to prove and which it did attempt to prove. The very object of the prosecuting attorney's opening statement was to call the attention of the jury to the facts which the State expected to prove and upon which it relied for a conviction.

III.   Several other alleged improper remarks of the prosecuting attorney are noted in defendant's motion for a new trial and urged here, but as said last

mentioned remarks are not embraced in the bill of exceptions we cannot pass upon them. The motion for a new trial does not prove its own allegations, and when it refers to matters which transpired and were known to defendant before the case was finally submitted to the jury, such matters must be incorporated in the bill of exceptions. [State v. Steen, 115 Mo. l. c. 477; State v. James, 194 Mo. l. c. 279.]

IV. It is also alleged that the court prejudiced the minds of the jury against the defendant by addressing his counsel in such language as to indicate that he considered them only competent to practice before justices of the peace. But we are not cited to any case holding that remarks of a scolding nature by a court to attorneys are grounds for reversal. State-v. Nelson, 181 Mo. 340, and other cases cited and relied on by defendant, are not in point, because they refer only to improper oral instructions and remarks made by courts directly to juries concerning their duties. It is highly improper for a court to allow a jury to find out on which side of a case its sympathies fall, or that it is personally unfriendly to a litigant or his attorneys, as such conduct might tend to prevent the jury from performing their duties in an impartial manner. Courts should treat all attorneys who have the right to appear before them with courtesy and respect so long as such attorneys be guilty of no contempt or misconduct. However, we do not believe the mere action of the court in criticising the defendant's attorneys during the progress of the trial would alone be cause for overturning the verdict, as its remarks did not indicate how it thought the case ought to be decided.

V. Defendant also assails the instructions given on the part of the State; but we find that these instructions when read with the instructions given at

the request of the defendant, correctly define the crime for which defendant was on trial.

VI.    Defendant also complains that the court omitted to instruct on certain issues of law arising in the case; but as we have decided to reverse the judgment, if any instructions were improperly omitted in the former trial they can be given upon a second trial; therefore we will not encumber the opinion with a further discussion of the instructions.

This brings us to the plea of defendant that the verdict of the jury is not based upon the evidence, but is the result of passion and prejudice. It is true that in addition to the trial court's insulting remark to defendant's attorneys, which was not called for by any misconduct on their part at that time, certain other things transpired at the trial tending to prejudice the jury against the defendant. The State, under pretense of rebuttal, introduced one Mabel French, and attempted to prove by her that she had also been seduced by defendant under promise of marriage.

After introducing the mother of Mabel French and proving that defendant kept company with Mabel before the alleged seduction of the prosecutrix (Ruth Bosley) the State caused Mabel French to be sworn, with the following result:

"Q.  What is your name?  A.  Mabel French. Q.  Miss Mabel French? A. Yes, sir.  Q.  And has that always been your name?  A.  Yes, sir.  Q.  Have you ever been married?  A.  No, sir.  Q.  Your child is here, isn't it?  A.  Yes, sir.  Q.  Do you know Claude Teeter?  A.  Yes, sir.  Q.  The defendant here?  A. Yes, sir.  Q.  How old are you, Mabel?  A.  Eighteen. Q.  When?  A.  Now.  Q.  Did you ever keep his company?  A.  Yes, sir."

The defendant objected to this, as not being rebuttal.

"Mr. Knight: I am laying the foundation and qualifying the witness as to the defendant's general reputation.

"The Court: Objection overruled."

To the action of the court in overruling said objection, the defendant excepted.

"Q. Miss French, where do you live? A. About five miles northeast of Jamesport. . . . .

"Q. And how close have you lived to Claude Teeter the last four or five years—the defendant? A. Well, a mile and a little over. Q. How long have you known him? A. About five years. Q. Known him intimately? A. Yes, sir. Q. Are you acquainted with the people and neighbors there where you and he lived? A. Yes, sir. Q. You have talked with the people there? A. Yes, sir. Q. Are you acquainted with the general character of Claude Teeter in the neighborhood in which he resides, for morality? A. Yes, sir. Q. Tell the jury whether it is good or bad? A. It is bad. Q. *Now, I will ask you if prior to the 28th day of February, 1909, and just prior, if he didn't seduce you under the promise of marriage?*"

Upon objection of the defendant, the witness was not permitted to answer the last question; but enough evidence had been elicited from the witness, when accompanied by the physical exhibit of the child, to clearly impress the minds of the jury with the idea that defendant was guilty of another seduction in addition to the one for which he was then on trial. This evidence was highly prejudicial to defendant.

Not only was proof of an independent crime incompetent to impeach defendant or establish his bad reputation, but it placed on him the burden of defending against a crime not mentioned in the indictment and which under the Constitution and laws he could not then be required to meet. [Constitu-

tion of Missouri, art. 2, sec. 22; State v. Phillips, 233 Mo. 299.]

It was inexcusable on the part of the prosecution to violate the well known rule of law that specific acts of lawlessness of which the defendant had not been convicted and which were not in any way connected with the offense for which he was then on trial, were not admissible to impeach him or prove his bad reputation.   [State v. Gesell, 124 Mo. 531.]

It appears by what transpired at the trial that the State, being doubtful whether or not the defendant was guilty of the crime mentioned in the information, sought to introduce evidence of another crime of the same character, and if possible, secure a verdict of guilty on the evidence of such other crime.

We cannot lend our indorsement to such a line of procedure.   The State has ample machinery for preferring indictments and filing informations against parties who violate its laws, and it should not attempt to convict anyone for a crime until it has preferred against him a proper charge, as required by the Constitution.

It was not within the power of the defendant to exclude the witness Mabel French and her bastard child from the courtroom.   "The sitting of every court shall be public, and every person may freely attend same."   [Sec. 3862, R. S. 1909; Boyd v. Railroad Company, 236 Mo. 1. c. 81.]

In this case it is manifest that the State secured the attendance of Mabel French for the deliberate purpose of prejudicing the jury against the defendant by placing before them evidence of another crime alleged to have been committed by defendant and which evidence he was powerless to exclude and which he had no opportunity to rebut.

The evidence of the prosecutrix tends to prove that the defendant seduced her under promise of marriage, as charged in the information; but the Leg-

islature, recognizing the fact that some unmarried
women as well as some unmarried men indulge in
sexual intercourse for the sole purpose of gratifying
their lustful desires, has provided that, in cases of
seduction, the evidence of prosecutrix as to the prom-
ise of marriage must be corroborated to the same ex-
tent as the evidence of the principal witness in per-
jury. [Sec. 5235, R. S. 1909.]

This corroboration need not be by a witness
or witnesses who heard the promise of marriage, but
may be by such conduct of the parties as usually ac-
companies a contract of marriage, or by statements
of the defendant to third parties.

In the case of State v. Eisenhour, 132 Mo. 140,
it was held that evidence that defendant had paid
prosecutrix weekly visits for a period of two years,
during which time she kept company with no other
man, was sufficient corroboration of her evidence that
her ruin was consummated under promise of mar-
riage.

In the case of State v. Hill, 91 Mo. 426, it was
held by this court that defendant having kept com-
pany with the prosecutrix for four years before the
alleged seduction took place, this protracted court-
ship itself was sufficient corroboration of the promise
of marriage.

In the case of State v. Walker, 232 Mo. 252, the
defendant courted the prosecutrix several months,
and agreed to marry her. This agreement was brok-
en off by the mutual assent of the parties. The court-
ship was later renewed and again discontinued. Still
later the courtship was renewed and the prosecutrix
seduced under a new promise of marriage made dur-
ing a third period of courtship. In that case we held
that the promise of marriage during the first court-
ship, together with some preparation for the marriage
by prosecutrix, furnished sufficient corroboration that

the seduction was accomplished under promise of marriage.

In the case at bar there is no evidence of any preparation for marriage by either defendant or prosecutrix, so that the corroboration rests entirely upon statements alleged to have been made by defendant in the presence of one Sarah Call, the aunt of prosecutrix, at whose home the entire courtship between defendant and prosecutrix was carried on.

The prosecutrix testified that the promise of marriage and seduction took place the second time defendant called upon her. This evidence itself is improbable and unsatisfactory. While it is possible for courtships to proceed at such a break-neck speed, it is certainly very unusual, and the fact that the prosecutrix yielded to defendant on such limited acquaintance, tends more strongly to support the contention of defendant as to her previous unchastity than to corroborate her evidence that a promise of marriage was the means of bring about the alleged seduction.

The defendant placed in evidence three letters written to him by the prosecutrix during the four weeks following the alleged promise of marriage and seduction. These letters were all couched in a very gushing and affectionate tone, but none of them contain any reference to the alleged contract of marriage.

The attempted corroboration of the promise of marriage was as follows:

Defendant called on prosecutrix one day during a rain storm, and Mrs. Call, at whose home the prosecutrix was stopping, told defendant that her little boy had said defendant would go through fire for prosecutrix; whereupon defendant replied that he would, but expected soon to make arrangements so he would not have to. Whether this statement referred to an agreement to marry the prosecutrix then existing or to an engagement he expected thereafter to make, does not appear. If the defendant's remark referred to some

future contract which he intended to make, or to some promise of marriage entered into after the alleged act of seduction, it is valueless as a corroboration. The promise of marriage must precede the seduction. [State v. Eisenhour, 132 Mo. 140.]

Mrs. Call, the aunt of prosecutrix, also testified that on one occasion she told the prosecutrix to do something, and the prosecutrix having refused, the defendant took hold of her and compelled her to obey her aunt; saying at the time, "I expect you to mind me, and you had just as well learn one time as another."

The defendant also told said witness that the little sister of prosecutrix had said she was going to live with him and prosecutrix when they got married.

On another occasion, defendant told Mrs. Call that his mother had written him to court a nice girl and settle down and be a good boy; and that he had replied to his mother informing her that he was courting a nice girl and expected to get married. At the time of making this remark, defendant looked at prosecutrix and smiled.

All these remarks point in a somewhat indefinite way to a contract of marriage between defendant and prosecutrix, but they also sound a good deal like the joking and extravagant talk which often takes place among young people during courtship when no promise of marriage exists. Defendant denied the promise of marriage and the conversations detailed by Mrs. Call.

We would feel strongly inclined to hold that the evidence of Mrs. Call is a sufficient corroboration of the promise of marriage if the statements she details had been made before the alleged seduction; but they were made afterward, and proof that a contract to marry existed at a date subsequent to the alleged seduction does not fully establish the fact that a promise

to marry preceded the seduction, because ordinarily presumptions do not run backwards.

We might still be justified in holding the corroborative testimony sufficient, were it not for the evidence of prosecutrix that she yielded to defendant when he was yet a comparative stranger.

In this case the evidence of the prosecutrix as to the promise of marriage is of such a nature as to cast doubt upon her veracity; and under such circumstances the corroboration of her evidence as to the promise of marriage should be clear and convincing. Under the particular facts of this case, we must hold that the corroborative evidence was insufficient.

As the case must be retried, we will say that the prosecuting attorney should confine his evidence to the crime charged in the information; and if he desires to convict the defendant of seducing Mabel French, he should proceed against him for that offense by separate information.

The judgment of the trial court is reversed and the cause remanded. *Ferriss, P. J.,* and *Kennish, J.,* concur.