THE STATE v. HARRY WORDEN, Appellant.—56 S. W. (2d) 595.

Division Two, December 14, 1932.

*Geo. V. Farris* and *Chas. M. Grayston* for appellant.

*Stratton Shartel*, Attorney-General, and *C. A. Powell*, Assistant Attorney-General, for respondent.

WHITE, P. J.—The appeal is from a death sentence upon conviction in Jasper County, of rape. The information charges that the offense was committed by defendant upon Bettie Hefley, a girl under the age of sixteen years.

The evidence shows that November 5, 1931, about 7:30 in the evening, Bettie Hefley, fifteen years of age, and Catherine Morris, sixteen, with George Mimms and Norman Parks, both young boys, all of whom lived in Carthage, went for a ride in a Ford automobile. They drove about four miles from Carthage and parked their car in or near an abandoned mine which was about a half

mile from the highway. They had been parked only a short time when three men drove up in a Chevrolet. These men were Harry Worden, the defendant here, Lew Worden, his brother, and another man named Paul Stevenson. They approached the four each with a gun in his hands, ordered them out of the Ford and searched them. They took a bill fold from one of the boys but it contained no money. They searched the two girls also. One of the men then at the point of a gun forced the two boys, Parks and Mimms, to go to another part of the mine. They seemed to have been out of hearing of the other four. The defendant, Harry Worden, then took Bettie Hefley a short distance apart and with threats to kill her friend Catherine Morris forced her to submit to his ravishment. The robbers then drove away in both cars.

The girls made their way to a farm house and were taken to town where the Hefley girl was examined by a physician who found that the offense had been committed. The Wordens and Stevenson later were arrested and identified. Harry Worden admitted to the officers who arrested him that he had committed the act charged. Nowhere in the trial was it denied. The information was filed January 4, 1932. January 30, 1932, a jury returned a verdict of guilty.

The defendant had no attorney. Three attorneys were appointed for him by the court. They strenuously contend in their motion for new trial that the defendant did not have a fair and impartial trial, and it becomes necessary, in view of the extreme severity of the penalty, to examine the record with care.

██ I. January 28th the defendant filed an application for continuance which stated that he was unable to employ counsel; that the court had appointed George V. Farris and Charles M. Grayston to defend him.

The application stated that the day before, January 27th, Lew Worden, the brother of this defendant, entered a plea of guilty in that court to another rape and was sentenced to be hanged; that the defendant was not connected with that offense; that at the time of the sentence Judge Harvey Davis stated in open court that the crime was one of the most hideous known to the law and that it was the duty of the court to sentence that defendant to death; that the courtroom was packed with people and "a number of jurors duly empaneled for service this week at this term of court were in the courtroom and heard the sentence imposed upon Lew Worden;" that thereafter the Joplin News-Herald, a newspaper of general circulation published in the City of Joplin published in flaming headlines in its afternoon edition: "Lew Worden sentenced to hang."

The application further stated that Monday, January 25, 1932, the Hon. Howard Gray, former Judge. of the Circuit Court and of the Springfield Court of Appeals, and a lawyer of long standing in Jasper County, in the hall of the courthouse where the jurors were, made bitter and caustic remarks saying in effect that justice had broken down in Jasper County, and. that this defendant as well as his brother should be hanged, and other like remarks. The application then declared that "on Tuesday and Wednesday of this week" the case of the State of Missouri v. King was in progress; that King was charged with the crime of rape, and that a number of jurors have heard part of the testimony in that case. The application closes with this statement:

"Defendant further states that by reason of being confined in the Jasper County jail he has been unable to procure any witnesses in his behalf, but that if this cause should be continued until the next term of this court defendant would be enabled to procure witnesses and be enabled to obtain a fair and impartial trial of this cause at the next term of this court."

On the same day the defendant filed a motion to quash the jury panel. That motion states the same facts as in the other motion regarding sentence of Lew Worden and the circumstances attending it. In addition it stated that the case was originally set for January 25th, and the same panel of jurors was present and were congregating in the hall of the courthouse, not being confined in the jury room, and that the case of this defendant was being discussed by the bystanders who were mingling freely with the members of the jury, and that various persons made statements within the hearing of the members of the jury panel that the defendant should be hanged without a trial.

If the facts stated in the application for a continuance and in the motion to quash were true the trial court in the exercise of its discretion could properly have granted the continuance, which would in effect make it unnecessary to sustain the motion to quash. But the statements in such a motion for continuance do not prove themselves. It is true that the motion was verified by the defendant himself but it is not stated that he was present and heard anything said when his brother was sentenced, or that he heard Judge Howard Gray make the speeches said to have been made, or that he heard the other statements in the hall by bystanders in the presence of members of the jury. It is quite apparent that he was not present at any of those times because he was in jail and his own case did not come up until afterwards. Even if his unsupported verification could be taken as proof of such facts if made of his own knowledge, which we do not decide, the fact that it was not upon his own knowledge but upon information leaves an entire absence of proof.

Further it is quite apparent that the facts alleged, if true, were susceptible of definite proof. If any of those things occurred as alleged, many persons were present and heard them, and affidavits could have been obtained as to whether they occurred and whether any of the jury panel heard any of them. So the allegations of both motions rest entirely without proof when proof was amply available if they were true.

Furthermore the Bill of Exceptions recites:

"Thereupon a number of jurors were examined upon their *voir dire* examination by the prosecuting attorney and by counsel for the defendant, and a panel of thirty qualified jurors were qualified and passed by the prosecuting attorney and by counsel for defendant."

Nothing further in the record appears about the *voir dire* examination of the jury. The jurors were "passed" by counsel for defendant. It must be inferred that the jurors were interrogated as to any possible reason for disqualification, including all the incidents mentioned in those motions and they qualified to the satisfaction of the defendant's counsel. It is not stated that a single juror was challenged for cause. The record shows a statement of the trial judge:

"If the court has the least suspicion the prospective jurors cannot give this defendant a fair trial the court has a way to summon additional talesmen to complete the panel and the court will certainly exercise that right."

That, in fact, was done. Twelve additional talesmen were added to the panel, and no objection is noted to any of them.

In the absence of any showing to the contrary we must presume that a fair and impartial jury was selected according to law. [State v. Perno, 23 S. W. (2d), l. c. 88, 89; State v. Hart, 331 Mo. 650, 56 S. W. (2d) 592.]

One statement in the motion for continuance which appeared to give the court further concern was that by reason of being confined in the county jail the defendant was unable to procure witnesses in his behalf and that if the cause were continued another term he would be enabled to procure witnesses so as to obtain a fair and impartial trial. There was no claim of lack of time for preparation in any respect other than to procure witnesses.

The court said in appointing Messrs. Grayston and Farris to represent the defendant:

"The court is of the opinion that he selected two of the most able and leading lawyers of the Jasper County Bar."

The date of that appointment does not appear in the record. Mr. Tadlock also later was appointed as counsel for defendant. The record of the trial shows that the defendant was ably represented

by those attorneys; that they understood every feature of the case and all the facts; and that they knew how to take every advantage favorable to the defendant. Mr. Tadlock in his argument to the jury for defendant was justly complimented by the prosecutor on the ingenious way in which he brought to bear every feature that could favor the defendant and mitigate his punishment. His argument is set out in full in the record. There is no complaint that the prosecutor did not argue the case fairly.

The information was filed January 4, 1932. The case was set for trial January 25th, three weeks later. It was reset for January 28th. A verdict was returned January 30th. The general statement in the application that at another term the defendant would be able to procure more witnesses in his behalf states nothing as to how or where he could procure the witnesses, or what he might be able to prove by them, and nothing as to any facts which would constitute his defense. No evidence was offered by the defendant except that of two witnesses, his sister and his wife, each of whom testified that the defendant could not read nor write and that his employment was that of common laborer. In his argument before the jury his counsel in effect admitted the guilt of the defendant, spoke of it as an act which had occurred; spoke of what the defendant "did." The only effort of counsel was to minimize the offense because of the somewhat unconventional situation of the prosecuting witness and her companions, alone in an automobile in an abandoned mine. From all of this it is clear that the defendant did not expect any witnesses who could establish an alibi or state any fact that would tend to show his innocence. The testimony of the girl was corroborated by her girl companion, and by George Mimms up to the time he was marched away from the girls by one of the robbers. The other boy was out of the State at the time of the trial. The defendant did not testify. His brother was available for whatever his testimony was worth, knew all about the facts, and he was not called.

There is no claim or intimation by defendant's counsel that any other witness was present at the time the offense was committed, or near enough to know anything about it. The record shows almost conclusively that any witness who could in any way have sworn to facts tending to prove the defendant's innocence or in any way mitigate the crime could not have been procured.

The court overruled the motion for continuance and the motion to quash; there is no view of the case in which it could be said the discretion of the trial court was abused in such rulings.

II. Appellant assigns as error that there was no substantial evidence to support the verdict. The brief statement of facts above shows that the evidence was entirely sufficient to support the verdict.

■ III. It is claimed that the verdict is defective, because it contains no finding that the girl assaulted was under sixteen years of age. The verdict was as follows:

"We, the jury, find the Defendant, Harry Worden, guilty as charged in the information and assess his punishment at death."

It was not necessary for the verdict to particularize that Bettie Hefley was under the age of sixteen years. The defendant was found guilty as charged in the information which included an averment of that fact.

■ IV. Complaint is made of Instruction 2 on the ground that it does not require the jury to find that the act of defendant was unlawfully and feloniously committed. It is not required that an instruction should find that the offense charged was committed feloniously where the *acts* which the instruction does require the jury to find constitute a felony. [State v. Frost, 289 S. W. 1. c. 897, and cases cited.]

■ V. It is claimed that Instruction 6 given by the court is erroneous because it told the jury that if they should find the prosecuting witness to be under sixteen years of age, it was immaterial whether she consented to the act charged or not. The complaint is that the instruction is a comment upon the evidence. It is always competent for the court to instruct the jury as to the legal effect of any specific fact. There was no error in that instruction.

■ VI. The State introduced a certified copy of the birth certificate of Bettie Hefley showing that she was born May 28, 1916. This is assigned as error. The offense occurred in November, 1931. The certificate of such birth is required to be filed by the attending physician, Section 9052, Revised Statutes 1929, and a certified copy of such certificate is admissible in evidence. [Sec. 9060, R. S. 1929; Griffith v. Continental Casualty Company, 299 Mo. 426, 1. c. 443, 253 S. W. 1043.]

The complaint is that the portion of the act providing for certified copies as evidence is contrary to Section 28, Article IV, of the Constitution, in that the title of the act has no reference to the issuance of certified copies. The Act appears in the Acts of 1909, page 538, and contains Section 9060.

Since original certificates of that character are required by the statute, Section 9058, Revised Statutes 1929, to be permanently kept,

such a certificate becomes an official record, which is always admissible in evidence. A copy of a public paper required to be filed, certified by the officer entrusted with its custody, is admissible in evidence if the original is admissible. [State v. Tarwater, 293 Mo. 273, 239 S. W. 1. c. 482; Reynolds v. Prudential Ins. Co. of America, 88 Mo. App. 679; Childress v. Cutter, 16 Mo. 24.] A certified copy was admissible without the authority of Section 9060.

■ VII. It is complained that the court erred in submitting forms of verdict:

"We find the defendant Harry Worden guilty as charged in the information and assess his punishment at ————."
And:

"We, the jury, find the defendant Harry Worden guilty as charged in the information and assess his punishment at imprisonment in the penitentiary for a term of —— years."

A third form was presented to be used if the jury should find the defendant not guilty.

The complaint is that the court failed to instruct the jury as to the maximum term for which the defendant might be imprisoned.

Instruction 2 told the jury that if they found the defendant guilty they could assess his punishment at death or imprisonment in the penitentiary for not less than two years.

Appellant contends that the jury was not made aware that they could sentence the defendant to the penitentiary for life. Literally the objection is untenable. The minimum imprisonment was two years. There was no maximum. The only objection that can be made is that the jury would fail to understand and would be misled by that. We do not think that the jury could be so misled.

There is nothing in the proceeding nor in the arguments, all of which are set out at length, which would indicate that the jury did not understand that there was no maximum limit and if they chose that they could inflict imprisonment for life. The defendant could easily have asked a more specific instruction in that respect, if counsel had thought it would be an advantage to the defendant. The entire argument to the jury was an effort to get a sentence less than death. No doubt the jury was properly interrogated on the *voir dire* as to whether they were willing to inflict a death penalty, and incidentally were made to understand that they could fix life imprisonment. There is no error in that instruction, nor anything that would mislead.

We are unable to find that the trial court committed error in any particular. On the contrary, the record shows that the defendant had a fair and impartial trial. The judgment accordingly is affirmed|

The date of execution is set for the 20th day of January, 1933. All concur.