THE STATE v. E. J. SPINKS, Appellant.—125 S. W. (2d) 60.

Division Two, February 21, 1939.

*Ralph S. Latshaw* and *Ralph S. Latshaw, Jr.,* for appellant.

108

*Roy McKittrick,* Attorney General, and *W. J. Burke,* Assistant Attorney General, for respondent.

COOLEY, C.—Appellant, defendant below, was convicted in the Circuit Court of Jackson County of the crime of rape, alleged to have been committed by having carnal knowledge of one Maxine Addington, a female child under sixteen years of age. Pursuant to the verdict of the jury he was sentenced to two years' imprisonment in the penitentiary and has appealed.

The offense is alleged to have been committed on or about June 15, 1936, in Kansas City, Jackson County, in which city the prosecutrix and defendant lived. Maxine was then about fourteen years of age. According to her testimony and that of a girl friend, Frances Marriott, then about thirteen years old, the two girls were together on the day in question, and by agreement between them Maxine telephoned defendant, whom both the girls knew, and suggested that he take them to a show. He agreed, and met them in his automobile. After getting some "hamburgers" and driving around town for a time defendant drove with the girls to a place in Kansas City spoken of as Twenty-fifth and Genesee, near an old, abandoned gas tank and stopped. Up to that time the three had been riding in the front seat of the car. Defendant suggested sexual intercourse and it seems each of the girls agreed "she would" if the other would. Defendant and Frances got in the back seat

of the car where defendant tried to have intercourse with Frances but, she testified, "he could not." She then got back in the front seat and Maxine got in the back seat with defendant where, according to the testimony of both girls, he accomplished the sexual act with Maxine. With this brief outline of the case we shall take up the contentions urged by appellant for reversal and make such further statement of the facts as may be deemed necessary in connection with the discussion of points to which certain portions of the evidence may respectively pertain.

I. Appellant urges that his demurrer to the evidence should have been sustained and a verdict of not guilty directed. This contention, as we understand appellant, is not upon the ground that the testimony of the girls was not sufficient, if true, to warrant conviction, but rather upon the ground that both girls had told different and contradictory stories before the trial and that their testimony was unworthy of belief. Throughout the trial defendant contended and attempted to show by cross-examination of Maxine and Frances that they had been claiming until a week or so before the trial that the offense had occurred near a place called Avondale, which would make the venue in Clay County, and that the *situs* and been changed in order to give the Jackson County Circuit Court jurisdiction. It was developed on cross-examination of both girls that they had on several occasions spoken of having gone with defendant to Avondale or to a field near there but they had not mentioned having been with defendant at Twenty-fifth and Genesee or near the old gas tank until a week or so before the trial when, they testified, they went with Juvenile Court officers and pointed out the place where the offense had occurred. They testified, however, that they had been with defendant at the place near Avondale but said it was at a time a few weeks later than the June episode involved in the trial. They gave no very satisfactory explanation of why they had failed to mention, on former occasions, the trip to the vicinity of Twenty-fifth and Genesee, the gas tank location, saying in substance that they had not discussed it or had not thought it necessary, or something to that effect, until the assistant prosecuting attorney in charge of the case had asked specifically when and where their first clandestine meeting with defendant occurred. Said assistant prosecuting attorney claimed they had informed him of the trip to the vicinity of the gas tank several months earlier and, by intimation at least, that their testimony before the grand jury showed the offense to have been committed in Jackson County. In addition to the foregoing, in August, 1937, some two months before the trial, Maxine and her grandmother were taken by defendant to the office of his attorney where she signed and swore to a statement, prepared by said attorney, that defendant had never had sexual intercourse with her. At the

trial she admitted having made the statement but said it was not true and she had made it "because I thought maybe it would clear this thing up."

Without going further into detail as to the prior contradictory statements we deem it sufficient to say that we are convinced this matter presented a question for the jury, whose province it was to determine the credibility of the witnesses and the weight to be given their testimony. The testimony of these girls at the trial was direct and positive and if believed by the jury, as it was, clearly warranted conviction. There was no such impeachment, either by proof of prior· inconsistent statements or otherwise, as would authorize the court to say, as matter of law, that said testimony was incredible or unworthy of belief. The demurrer to the evidence was properly overruled.

II. This prosecution was by indictment, returned by the grand jury on January 8, 1937. At the same time the grand jury returned at least two other indictments against this defendant for like offenses,—"statutory rape." One charged the commission of such offense upon Frances Marriott, in Jackson County, on or about December 4, 1936, and another, Exhibit 7, a like offense alleged to have been committed on or about December 4, 1936, in Jackson County, upon Mona McGaughey, a fourteen-year-old girl. Defendant introduced in evidence the Marriott indictment. Thereupon the State, over defendant's objection, introduced the McGaughey indictment. Defendant's purpose in offering the Marriott indictment was not stated at the time it was offered. When the offer was made, Mr. Gorman, for the State, said, "I have no objection" and the indictment was read to the jury. Mr. Gorman then remarked, "I don't know the purpose of that one," to which defendant's counsel replied, "You will find out when we argue the case." Mr. Gorman said, "Then I am going to offer the other two. I will do a little arguing too, myself." He then had the reporter mark for identification two exhibits, 7 and 8, and, as above stated, introduced and read to the jury Exhibit 7, the McGaughey indictment. Exhibit 8 seems not to have been introduced. From his printed argument in this court it seems defendant's counsel, in offering the Marriott indictment, thought it might tend to contradict and impeach Miss Marriott as a witness and perhaps also explain away the damaging effect of a statement which Mr. Gorman had made in the hearing of the jury· earlier in the trial, that "There is two indictments on file now and Mr. Latshaw knows that." The court had denied defendant's motion to discharge the jury because of that statement and thus the jury was left with the information—and no admonition to disregard it—that defendant stood· charged with another offense besides the one on trial. Defendant may have reasoned that since the jury had been informed

that there were two indictments and they might have supposed that one of them was for an assault upon Frances Marriott it could make his case no worse to introduce that one, and it did tend to contradict Frances' testimony. The indictment charged that defendant had had sexual intercourse with her, in Jackson County, on or about December 4, 1936. She did not testify at the trial to any such occurrence. She testified to being with Maxine when the assault upon the latter was made in *June*, 1936, but both girls testified definitely that that occurred about June 15th, not in December. Moreover, Frances testified that defendant had not had intercourse with her at that time, that he tried but "could not," and that he had *never at any time* had intercourse with her. It had been brought out during the trial that she had testified before the grand jury which returned the Addington and Marriott indictments. The natural supposition would be that she must have testified to an act of intercourse as charged in the indictment. There was some evidence that Frances Marriott and Mona McGaughey had been to Avondale or near there with defendant at some time a few weeks after the June, 1936, episode but there was no evidence of misconduct on that occasion. Maxine said she did not go on that trip. Mona McGaughey was not a witness and, as above stated, Frances testified defendant had never had intercourse with her. Moreover, the place referred to is in Clay County and the Jackson County grand jury could not and did not purport to indict for an offense committed in Clay County. So defendant argues that not only the *situs* of the alleged offense but the facts relative thereto have been changed and that the Marriott indictment had a bearing on that contention. Be that as it may, we can see no justification for the introduction by the State, over defendant's objection, of the McGaughey indictment.

Miss McGaughey was not a witness in this case nor is there anything in the record to indicate that she was in any way connected with the incident involved or that the offense charged in the McGaughey indictment had any connection with or relation to the one for which defendant was on trial. It was a separate and distinct offense, not connected with the offense with which defendant was charged.. The general rule, tersely stated in 1 Bish. New Crim. Proc. (4 Ed.), section 1120, as quoted approvingly in State v. Spray, 174 Mo. 569, 576, 74 S. W. 846, is, "The State cannot prove against a defendant any crime not alleged either as foundation for a separate punishment, or as aiding the proofs that he is guilty of the one charged, even though he has put his character in issue." [In the instant case defendant had not put his character in issue when the McGaughey indictment was introduced. Whether or not character witnesses might be asked on cross-examination if they had heard of other offenses, by way of contradiction or impeachment,

we need not here consider.] In the Spray case the court discusses the question at length and cites numerous cases showing how uniform and firmly established the general rule is. There are exceptions to the rule, which are also well established. In State v. Spray, supra, 174 Mo. l. c. 582, 74 S. W. l. c. 850, the court said, quoting from an earlier decision:

"Generally speaking, evidence of other crimes is competent to prove the specific crime when it tends to establish: first, motive; second, intent; third, the absence of mistake or accident; fourth, a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the others; fifth, the identity of the person charged with the commission of the crime on trial."

In State v. Martin, 74 Mo. 547, the defendant was charged with murder. The State introduced two indictments charging felonious assault on persons other than the deceased. The defendant had not put his character in issue. The admission of the two indictments was held reversible error. In State v. Jones, 306 Mo. 437, 268 S. W. 83, proof of conviction of other offenses committed by the defendant before he had put his character in issue and before it was known whether he would be a witness or not was held prejudicial error. The court said: "The practice of seeking to obtain an advantage in a trial of a case by injecting therein unfair insinuations should have the severest condemnation and suffer the most disastrous result permissible under the law." [306 Mo. l. c. 449, 268 S. W. l. c. 87.]

In State v. Bowman, 272 Mo. 491, 199 S. W. 161, the defendant was charged with statutory rape. The State was permitted to prove an extra judicial statement made by him to the effect that he had been criminally intimate with a girl (under the age of consent) other than the prosecutrix. This was held reversible error. This court said (272 Mo. l. c. 501, 199 S. W. l. c. 164): "The proof of crimes committed by a defendant, similar to that for which he is on trial, for the purpose of showing the intent, is admitted in certain classes of cases, but such evidence is held inadmissible in cases of the character of this one. [State v. Smith, 250 Mo. 274, 157 S. W. 307; State v. Teeter, 239 Mo. 475, l. c. 485, 144 S. W. 445.]"

In the Teeter case the defendant was charged with seduction under promise of marriage. The State was permitted to prove by a young woman other than the prosecutrix that he had seduced her in like manner. This court held that such evidence was highly prejudicial. In the Smith case the defendant was charged with assault with intent to commit rape upon a girl under the age of consent. Evidence of a similar assault upon another girl was admitted. It was held reversible error. In State v. Horton, 247 Mo. 657, 153 S. W. 1051, the defendant was charged with statutory rape. An offer by

the State to prove a similar assault upon another girl was held to have been properly rejected, such evidence not being competent. See also, for discussion of the rule as to proof of other offenses than that for which the defendant is on trial, State v. Tunnell (Mo.), 296 S. W. 423, 427. Other cases might be cited. The foregoing are deemed sufficiently illustrative.

In the instant case defendant had not taken the witness stand when the McGaughey indictment was introduced. If he had prior to that time testified as a witness, a prior *conviction* of crime might have been proved to affect his credibility as a witness. [Section 1752, Revised Statutes 1929 (Mo. Stat. Ann., p. 4021), and see cases cited in note 5 to said section in Mo. Stat. Ann.] But that statute does not go to the extent of permitting proof of a mere *charge* of an offense, even after a defendant has testified as a witness in his own behalf, much less before he has testified and before he has put his character in issue, as here, and before it can be known that he will do either. [See State v. Hillebrand, 285 Mo. 290, 225 S. W. 1006, 1008.]

The evidence furnished by the McGaughey indictment could not of course have been competent for the purpose of showing that, *having been charged* by a grand jury indictment with another similar offense, it was *likely* or probable that he was guilty of the offense for which he was on trial. [See State v. Spray, supra.] It was not competent for the purpose of showing intent or motive. [State v. Bowman, supra.] As said in State v. Spray (a robbery case), 174 Mo. l. c. 585, 74 S. W. 851, so may we appropriately say here, "the facts constituting the offense, and the very act itself, as shown by the prosecuting witness, was sufficient evidence of intent. *The act of defendant, if he committed it, needed no explanation to indicate intent. The act itself carried the intent with it.*" (Italics ours.) And the circumstances shown clearly do not bring the case within any of the other exceptions to the general rule forbidding evidence of other offenses. The admission of the McGaughey indictment was reversible error.

 III. Appellant says the age of the prosecutrix was not shown by competent evidence. She testified she was born July 18, 1922. A copy of the record or certificate of her birth on file with the State Board of Health at Jefferson City (State Registrar of Vital Statistics) was introduced, showing that she was born July 18, 1922. It was not shown whether or not the copy of the record was certified by the proper officer, but no objection was made to the copy on that ground, the only objection offered being "because it is not the original." Appellant's contention seems to be based upon the claimed inadmissibility of the copy of the birth certificate. By Section 9052, Revised Statutes 1929 (Mo. Stat. Ann., p. 4193), a certificate of birth must be filed with the local

registrar (of Vital Statistics) of the district in which the birth occurred, which certicate, by other sections of the statute, is to be transmitted to the State Registrar. By Section 9060, Revised Statutes 1929 (Mo. Stat. Ann., p. 4199), copies of such records, certified by the State Registrar, are admissible as prima facie evidence of birth or death. As we have said, defendant did not object to the copy on the ground that it was not properly certified. If properly certified the copy was admissible. [See State v. Worden, 331 Mo. 566, 56 S. W. (2d) 595, 598.]

■ IV. It is contended that the court erred in admitting certain testimony given by Mr. Gorman and by Judge COWAN, Judge of the Juvenile Court.

Mr. Gorman, Assistant Prosecuting Attorney, took the witness stand and gave—without propounding questions—testimony as to the venue. He testified, "On Sunday, October 24, 1937, I had occasion to go to ascertain the venue from the information that I had and where this crime was committed, and after going down there myself, personally, I found that it happened in—on Twenty-fifth Street, just—or on Genesee, just south of Genesee, in Kansas City, Jackson County, Missouri." Defendant moved to strike out that testimony, especially the portion saying "he found that it happened." The statement that "the crime was committed" and that "it happened" at a certain place could have been known to Mr. Gorman only by hearsay or assumption. He could not properly assume or testify that such were the facts. Defendant did not have opportunity to object before that testimony was given. Defendant's motion to strike should have been sustained.

As to Judge COWAN's testimony:

■ In the testimony of Maxine and Frances it had developed that they had both, for a period of several months, been restrained or confined in an institution called the House of Good Shepherd, "under sentence," as they said, of the Juvenile Court. Judge Cowan was judge of that division of the circuit court. He was called by the State in rebuttal, apparently for the purpose of proving that the detention was not really under a "sentence." Defendant objected to his testifying on the ground that his testimony would not be rebuttal. Upon being assured by the State's attorney that the testimony called for would be rebuttal, the court overruled defendant's objection. Judge Cowan testified that he had ordered the girls to the House of Good Shepherd, but that he did not consider it a sentence. "They were placed there for safe keeping." Defendant's motion to strike that portion of the answer was overruled. Asked to state his reasons for placing the girls in said institution the witness, over the objections of defendant, said:

"I did not sentence the girls to the House of the Good Shepherd for what they had done, because I thought they were rather young

and really not responsible for that. I placed them there for safe keeping, so that no one could talk to them and change their minds as to their testimony, and which I had taken statements from them in regard to this case, because that has been done in the past, and when I have sent the girls back home, someone has contacted them and they have changed their testimony.''

Defendant moved to strike out said answer, which motion was denied. We think that testimony should not have been admitted and should have been stricken out. Judge Cowan's intimation that he placed the girls under detention and surveillance so that no one could talk to them and ''change their minds as to their testimony,'' etc., might well have been understood or inferred by the jury to have reference especially to defendant or his attorneys. His personal reasons for sending the girls to the detention home could not have been binding upon this defendant who was not a party to that proceeding. The official ''sentence,'' judgment or order—whatever it was—was not offered in evidence. For discussion of the principle involved see Polk v. Mo.-Kan.-Tex. Railroad Co., 341 Mo. 1213, 111 S. W. (2d) 138.

There are a number of other complaints in appellant's brief as to alleged misconduct of the assistant prosecuting attorney and other matters occurring during the trial, most of which we think, from the record, are not well founded and others which will probably not occur on another trial. The judgment is reversed and the cause is remanded. *Westhues* and *Bohling, CC.,* concur.

PER CURIAM:—The foregoing opinion by COOLEY, C., is adopted as the opinion of the court. All the judges concur.