THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* NEMESIO ARROYO MADERA, Defendant and Appellant.

No. 11584. Argued December 13, 1946.—Decided March 11, 1947.

*C. H. Juliá* and *Guillermo Pierluisi* for appellant. *Luis Negrón Fernández, Acting Attorney General (E. Campos del Toro, former Attorney General,* on the brief), and *Joaquín Correa Suárez, Assistant Prosecuting Attorney,* for appellee.

MR. CHIEF JUSTICE TRAVIESO delivered the opinion of the Court.

Nemesio Arroyo Madera, charged with murder in the second degree, before the commencement of the trial petitioned the court in the sense that if the charge against him should be reduced to voluntary manslaugther, he would plead guilty. The district attorney consented to this petition and the judge agreed, but the defendant, after entering a plea of guilty of voluntary manslaughter, stated: ''Your Honor, I shot at him because he attacked me with a dagger. In self-defense.'' In view of this statement, the judge ordered that the trial proceed on the charge of murder in the second degree. The defendant was convicted on that charge and sentenced to twelve years' imprisonment in the penitentiary, and further sentenced to two months in jail for carrying a weapon.

As a first assignment, it is urged that the court *a quo* committed grave error in not complying with Act No. 32 of May 3, 1943, by asking the jurors who acted in this case whether they had been convicted of a felony, as provided by said Act.

It is the duty of every attorney to enlighten and inform the court as to any violation of, or noncompliance with, the law which the court may have committed through inadvertence or otherwise. The accused cannot sit silently by and wait until the end of the trial and subsequently, when convicted, on appeal assign as an error such a noncompliance with the law by the lower court. The defendant does not point out, nor does the record show, the manner in which his rights were prejudiced. The rule established by this Court is to the

effect that errors which are not prejudicial to the accused constitute no ground for reversal. In the case of *People* v. *Báez*, 45 P.R.R. 498, wherein it was urged by the defendant that the court erred by not having the jury sworn in, this court said: "Besides, the appellant was represented at the trial by two attorneys and no protest or objection for the lack of said oath appears to have been made or raised at the trial; . . ." "If the oath in the instant case was not taken by the jury, the attention of the court should have been called to that fact in order that this defect might have been corrected." And in *Baldwin* v. *State of Kansas*, 129 U. S. 52, cited by this court in *People* v. *Báez, supra,* the Supreme Court of the United States said:

"A still more conclusive answer on this point is, that no objection was made to the form of the oath when it was administered, or at any other time prior to its presentation in this court. If there was any irregularity in this respect, it should, and probably would, have been objected to at the time it occurred. . . . A party cannot sit silently by, and take the chances of acquittal and subsequently, when convicted, make objections to an irregularity in the form of the oath. Not only must the objection be made when the irregularity is committed, but the form in which the oath was taken, as well as the objection, should be incorporated into the bill of exceptions, in order that this court may see whether or not it is sufficient."

The alleged error has caused no prejudice to the defendant and, as this question was not raised during the trial in the lower court, it should not be raised on appeal.

██ The second assignment is that the court committed grave error in not accepting the plea of guilty of voluntary manslaughter entered by the defendant-appellant, and especially, in ordering the trial to proceed on the charge of murder in the second degree, after it had accepted a reduction of the charge to voluntary manslaughter, and all this without the defendant-appellant having withdrawn his plea of guilty or entered any other plea.

A mere reading of the transcript of the evidence is sufficient to conclude that the alleged error is groundless. The

defendant stated that he wished to enter a plea of guilty of voluntary manslaughter, but immediately alleged that he shot at the deceased because the latter had attacked him with a dagger. These statements of the defendant were equivalent to a plea of not guilty and justified the order of the judge of the lower court that the trial be proceeded with. In *People* v. *Barnard,* (1938) 15 N. E. (2d) 915, where the defendant pleaded guilty, but afterwards moved to withdraw his plea, the court discussing this matter, and referring to the power of the court to order the withdrawal of such plea, said:

"The general rule is that it is within the sound discretion of the court whether the plea of the defendant may be withdrawn where with a full understanding of the nature of the charge against him he has pleaded guilty. Four exceptions to this rule have been recognized, '(1) Where it appears that a plea of guilty was entered through a misapprehension of the facts or the law; (2) where it appears that there is doubt of the defendant's guilt; (3) where it appears that the defendant has a defense worthy of consideration by a jury; and (4) where it appears that the ends of justice will be best served by submitting the case to a jury.' "

Other cases to the same effect are *People* v. *Troop* (1935), 194 N. E. 553; *Commonwealth* v. *Dr. Paul* (1936), 184 A. 480. If we apply the foregoing rule to this case, we must conclude that the lower court acted correctly, since not only was there doubt of the defendant's guilt, but he alleged and believed to have a good defense.

██ As a third assignment it is urged that the lower court committed grave error in permitting the district attorney, in his cross-examination of the witness Tomás E. Alcalá, to introduce evidence of character against the defendant and also proof of other crimes, with the sole purpose of unfavorably impressing the jury against the defendant, and without the latter having introduced evidence of good conduct or there being involved any of the exceptions recognized by the law and the decisions; and that it also erred in denying the motion for mistrial.

The incident which gave rise to this assignment, as shown by the transcript of the evidence, was in brief as follows:

Antonio Caraballo, insular policeman, on examination by the district attorney, testified twice that when he arrested the defendant immediately after the fight in which Samuel Santiago Zambrana was killed, the defendant was not hurt nor had any scratches whatsoever; and on cross-examination by the defense, when asked: "Did you notice if defendant's hands were hurt or wounded, or if they had any scratches?", the witness categorically answered: "He had none."

In order to lay the foundation to establish the alleged self-defense, the defendant introduced as a witness Tomás E. Alcalá, Assistant Warden of the District Jail of Ponce, who testified that the document he had in his hands was the penal record pertaining to the defendant Nemesio Arroyo Madera. Upon being asked by the defense: "In what physical condition did Nemesio Arroyo Madera enter that prison on January 21, 1944, if there is any data indicating that?", he answered:

"Every prisoner who is committed, charged with the crime of murder, homicide, or any other felony of that nature, in compliance with superior instructions, is examined by the prison's visiting doctor in order to determine if he has any injury or wound. In the record pertaining to Nemesio Arroyo Madera there is an entry made on January 21, 1944, in the right margin, under the heading: 'Vicissitudes'."

He went on to testify: "There is an entry which states as follows: 'He has some scratches in the right hand and behind the right ear.' Signed: Dr. Luis A. Yordán"; that such an entry is made on the same day that the prisoner is incarcerated; that the entry made by Dr. Yordán bears no date; that when an entry has no date, it means that it was made on the same day the prisoner was committed to jail; that when the doctor does not come on the same day, he examines him on the next day; that he is sure that Dr. Yordán examined the defendant on the same day.

At the close of the examination of the witness, the defense stated that it was not going to introduce in evidence the penal record of the defendant. It was then that the district attorney asked the following question:

"Look and see if in connection with other commitments of the defendant to jail, there has been any entry of an examination of him?"

And added:

"State it. For example, when he was committed to jail for the first time, on May 29, 1933 . . ."

Counsel for the defense intervened, stating that he wanted to know what was the relevancy of the question. The district attorney answered that his purpose was "to investigate the entry in the record as to the day on which the defendant was charged with the commission of the crime, to see if he had said scratches in the ear. As the witness has just stated that when a prisoner arrives, he is examined, to see if on the other occasions that had been done." The defense counsel objected, saying: "I would prefer that my colleague should openly state that what he wants the witness to say is that this boy has been in jail on several occasions," to which the district attorney answered: "That is not so." The district attorney insisted that he was entitled to ask the witness "whether the defendant had been on other occasions confined in jail for other crimes and if there is a record of his examination." The defense stated that "we are on the verge of a mistrial" and that "the district attorney cannot make remarks before the jury which tend to impress them," and then the court instructed the jury as follows:

"The only thing that the court is going to say to the gentlemen of the jury is, that they should consider only what appears here as evidence. The statements made by the counsel when they are addressing a witness do not constitute evidence. Therefore, you shall take into account only what has been admitted as evidence by the court. In this case, the best evidence to show that the defendant had some scratches on the ear was the testimony of Dr. Yordán;

counselor put that aside and chose other evidence; this record has been introduced, and the district attorney skilfully tries to take advantage of that. Now counselor objects to the district attorney's questions regarding the remaining portion of the document, a part of which has already been submitted to the jury.''

The defense counsel took an exception and moved the court to order a mistrial. The court denied the motion. The district attorney continued to question the witness regarding the contents of defendant's penal record and the witness stated that said record dated back to 1933, when there still existed the rule to enter a notation of the result of the medical examination; that at the time of defendant's commitment in 1933, Dr. Yordán examined him and certified that he suffered from uncinariasis; that subsequent to May 1933, there is another commitment entry, in July 1935, but it has no notation as to the medical examination; that in September 1935, Dr. Yordán again examined him and found that he suffered from uncinariasis; that subsequent to all this there does not appear any other entry from Dr. Yordán until 1944. Asked by the district attorney if there were any other entries, he answered that there were in 1935, 1936, 1937, 1938, 1941, and 1942.

At the close of the cross-examination by the district attorney, the defense asked if the commitments referred to by the witness had been for homicides. The witness answered in the negative, that they had been for misdemeanors, such as violation of the Alcoholic Beverage Law, carrying a weapon, aggravated assault and battery, and malicious mischief.

When the defense resubmitted its motion for a mistrial, the court said:

''The court was inclined to decide that that was an indirect means of introducing evidence which was not admissible, but it happened that the district attorney continued his examination without objection from the defense and the witness answered, and of course, Attorney Pérez Marchand questioned him, and made it clearer because the district attorney had not asked him regarding crimes, but regarding entries.''

The defense stated that "a district attorney should not, under the guise of skill, carry into the record things which, under the law, cannot be carried therein in order to prejudice the defense of an accused." The court replied that that was the doctrine and the rule "but when an accused gives that opportunity to the district attorney he cannot complain of the result." The court closed the incident by giving the jury the following instruction:

"The court instructs the gentlemen of the jury at this time, that they may take into account everything that has been testified to by the witness in order to decide this case, but that the fact that there appear in a penal record several entries regarding the incarceration of a person for misdemeanors does not show, as to this case, anything regarding the guilt or innocence of the defendant in this case. In other words, you must try this case independently of any other, because a person may have been in jail, in the district attorney's office, or serving a sentence a hundred times and be innocent, and a person may never have been in jail and be guilty; so that the gentlemen of the jury shall bear in mind this instruction."

The conduct of the district attorney was incorrect and merits censure; and the trial court committed grave and prejudicial error in not sustaining the objection of the defense when the district attorney started his examination of witness Alcalá, the evident purpose of which was to apprise the jury of the fact that the defendant had been on several previous occasions arrested for or convicted of other distinct offenses, which were in no way connected with the crime of murder for which he was being tried in this case. One of the most elementary rules of criminal procedure is that the district attorney can not and should not introduce evidence tending to prove the bad character of an accused, unless the accused himself should have offered evidence with the purpose of proving his good character. By presenting such evidence, the accused puts his character in issue, and in such case the prosecution may introduce evidence in rebuttal. 22 C.J.S. 1068, § 676.

In the case at bar the defendant offered the testimony of witness Alcalá with the only purpose of proving that at the time he was committed to jail, the defendant had some scratches on the right hand and behind the right ear. The defense counsel expressly stated that he did not introduce in evidence the penal record of the defendant which the witness had in his hands, and the district attorney not only did not object, but he himself asked the witness regarding the contents of the entry of January 21, 1944, signed by Dr. Yordán.

The introduction in evidence of the contents of the above-mentioned entry did not establish any issue as to the character or reputation of the defendant. The district attorney was not entitled to introduce evidence tending to prove that the defendant had been arrested and committed to jail or convicted for other crimes. In 22 C.J.S. 1084, § 682, we find the rule which we consider applicable to this case, thus:

"The general rule, which is subject to exceptions stated in §§ 683–690, infra, is that, on a prosecution for a particular crime, evidence which shows or tends to show that accused has committed another crime wholly independent of, and unconnected with, that for which he is on trial, even though it is a crime of the same sort, is irrelevant and inadmissible, and such evidence of an independent crime is inadmissible for the reason, among others, that it ordinarily does not tend to establish the commission by accused of the offense charged, that accused must be tried for one offense at a time, and that, in accordance with the more extensive general rule, which applies to all cases, civil or criminal, the evidence must be confined to the point in issue." See State v. Spinks, 125 S. W. 2d 60.

The error committed in permitting the examination of the district attorney was, in our judgment, prejudicial to the defendant, since its unavoidable effect could be no other than to carry into the minds of the jury the conviction that the defendant was a man of bad character who had a criminal record. The instructions of the trial court, supra, even though they were given for the purpose of curing the error and preventing the prejudice which the latter might have

caused to the defendant, are insufficient and incorrect. Instead of instructing the jury that they should not take into consideration what had been stated by witness Alcalá in answer to questions put by the district attorney, the court instructed them "that they may take into account everything that had been testified to by the witness in order to decide this case." These words were in themselves sufficient to render defective the rest of the instructions.

Since this error is sufficient to justify the reversal of the judgment, we deem it unnecessary to discuss the assignments relating to the weighing and the sufficiency of the evidence.

The judgment appealed from should be reversed and the case remanded to the lower court for the holding of a new trial.

Mr. Justice Snyder dissented.