**STATE of Missouri, Plaintiff-Respondent,**

v.

**Sterling HILL, Jr., Defendant-Appellant.**

No. 50115.

Supreme Court of Missouri,

Division No. 1.

Oct. 14, 1963.

John P. Haley, Jr., Kansas City, for appellant.

Thomas F. Eagleton, Atty. Gen., Jefferson City, James W. Steele, Sp. Asst. Atty. Gen., St. Joseph, for respondent.

HYDE, Judge.

Defendant, charged under the Habitual Criminal Act (Sec. 556.280), was convicted of robbery in the first degree and sentenced to 25 years' imprisonment. Secs. 560.120 and 560.135 (statutory references are to RSMo and V.A.M.S.). Defendant has appealed but has filed no brief so we consider all grounds stated in his motion for new trial made in accordance with Supreme Court Rule 27.20, V.A.M.R., which serve as assignments of error on appeal. (See also Rule 28.02.)

The first assignment is that the State's evidence was insufficient to make a case against defendant, claiming insufficiency of identification, discrepancy in the amount of money claimed to have been taken with the amount recovered and failure to connect defendant with an abandoned car and shotgun found by the police. The following summary of the State's evidence shows this assignment to be without merit.

A few minutes before midnight on December 11, 1962, Robert Eppstein, manager of a grocery, delicatessen and liquor store in Kansas City (closing time 1:30 A.M.),

was in the store with a clerk, William Mickens, when two white men came in; the taller one with a sheer stocking over his head, holding a sawed-off shotgun, and the shorter one with a yellow scarf wrapped around his mouth which fell down when he talked. Defendant was identified as the shorter man by both Eppstein and Mickens at the police station later that night and at the trial. The man with the shotgun made Eppstein open the cash register and the shorter man took out the money. The taller man struck Eppstein with the shotgun when he said he could not open the safe. Eppstein then told him the safe was open and the shorter man took the money from it. The men made Eppstein and Mickens and three customers lie down in a narrow aisle on top of each other and the man with the shotgun said: "Don't move for five minutes or we will blow your heads off." Eppstein called the police as soon as he could get up. Defendant and his companion (who was also identified at the police station, as the taller man involved, by Eppstein and Mickens) were arrested later that night under circumstances hereinafter stated.

Officer Theisen, operating a police car, received a radio report of the robbery about midnight and soon saw two white men in a white Chevrolet, stopped about ten blocks south of the robbed store (particularly noticed because this was a colored area), who took off when he approached. Two other officers, who had also received radio reports, soon found the car abandoned at another location and found a nylon stocking and a yellow scarf in the car. A dog crew was called and the dog followed the scent from the car to a place where a shotgun with some loaded shells was found. The officers also found money under the left front door of the abandoned car and a number of bills outside. They followed a trail of bills to the south but the wind was blowing and some bills were scattered. A cab had been called to come to a house in the neighborhood and the police learned about this when the cab came to where they were

in the street. The cab driver drove past the house and came back on instructions from police, reporting that he had seen two men start toward the cab from the house. Two policemen then took the cab, drove to the house and defendant and his companion came out, approached the cab and were arrested. (These two men had gone to the house and asked to use the telephone to call a cab.) Two other policemen who followed the cab on foot put handcuffs on them and searched them. Defendant had money stuffed in his pockets, under his jacket and in his clothing. A total of $1,519.47 was recovered ($2,526.48 was reported missing by Eppstein); bills in the amount of $1,040.00 wrapped in a package with a bank deposit slip attached (which Eppstein said he had put in the safe) were among those recovered, as was also a twenty-dollar bill with a note stapled to it (stating it was from one customer to be delivered to another) which Eppstein had written, attached to the bill and placed in a drawer near the cash register. Eppstein had seen defendant open this drawer and this bill with the attached note was found in his possession.

Defendant makes three contentions concerning insufficiency of the evidence; the first that Eppstein based his identification on having seen defendant in the store on the Thursday or Friday preceding the robbery, when defendant had testimony indicating that he was in jail in Kansas City, Kansas. This contention is without merit for several reasons; first, Eppstein's identification at the police station on the night of the robbery and at the trial was positive on the basis of seeing defendant in the store at the time of robbery (as was Micken's identification); second, defendant's witness was indefinite about the time defendant got out of jail; third, Eppstein said he did not know what day he previously had seen defendant in the store only saying he had been there within the week prior to the robbery. The store's customers were mostly Negroes so he particularly noticed a white customer. Defendant's second con-

tention as to identity is that Eppstein stated the bill with the note attached to it was a twenty-dollar bill while one of the officers thought it was a ten-dollar bill. Another officer did not remember the denomination. The fact that the note written by Eppstein and attached to a bill was found in defendant's possession that night was strong evidence of identity of defendant as one of the robbers. The fact that about $1000.00 of the money reported lost was not returned does not indicate defendant was not one of the robbers, especially in view of the evidence as to bills being scattered in the street. Likewise defendant's third contention, that the police dog was only able to lead the officers to a shotgun but not to defendant, does not show failure to connect him with the robbery, especially in view of the evidence showing defendant was found in the same block and arrested about the time the shotgun was found. All of these claimed discrepancies were matters for the jury to determine and we hold there was ample substantial evidence to make a case for the jury and to support their finding that defendant participated in the robbery.

 Assignments 2, 3, 4 and 7 claim trial errors. Assignment 2 claims erroneous inflammatory language by the prosecuting attorney in his argument to the effect that "this shotgun was placed against the head," saying this was outside the record. However, we find ample evidence in the record to justify such a statement. Mickens said the shotgun was "right in my neck". Eppstein answered "yes" when asked if he was put in fear "when this man was holding the shotgun against your head." He had previously stated that the man put the shotgun on the head of a woman customer and told her "to get back or he would blow her head off." He also said the man "swung the gun at my head," struck him with it and said "now, open the safe or I will blow your head off." Assignment 3 claims error in restricting cross-examination of Eppstein as to the reason he was no longer employed at the store, suggesting that it had some connection with the amount of money reported lost with that recovered. "The trial court is permitted much discretion in determining and limiting the scope of cross-examination," especially "as to collateral matters." See State v. Spikes, Mo.Sup., 367 S.W.2d 515, 516, and cases cited. However, soon after the court sustained an objection to the question of whether there was any special reason for his leaving, the following question was asked and answered on re-direct examination: "Q. Mr. Eppstein, I haven't the faintest idea of why you left out there, but would you tell the court and jury whether it had anything to do with the robbery or the loss? A. None whatsoever, the corporation was sold and the new owners took over and I was out of work." We find no abuse of discretion in the court's action. Assignment 4 complains of inadmissible evidence being improperly permitted but does not specify what evidence is meant and so failing to comply with Rule 27.20(a) preserves nothing for appellate review. However, we have carefully read the record, with our authority under Rule 27.20(c) in mind, and find no prejudicially erroneous rulings on admission of evidence.

 Assignment 7 claims conflict between Instructions 1 and 4. Undoubtedly Instruction 2 was meant because Instruction 1 only told the jury that the Information was a mere formal charge and did not constitute any evidence of guilt. Instruction 2 authorized a verdict of guilty of first degree robbery if defendant made an assault on Eppstein with a dangerous and deadly weapon, "a sawed off shotgun", and "took and carried away any money or property from his person, or in his presence and against his will, by force and violence to his person, or by putting him in fear of some immediate injury to his person," etc. Instruction 4 was as follows: "The Court instructs the jury that all persons are equally guilty who act together with a common intent in the commission of a crime, and a crime so committed by two or more persons jointly is the act of all and of each one so acting. The Court instructs the jury that

when two or more persons knowingly act together in the commission of an unlawful act or purpose, then whatever either does in furtherance of such unlawful act or purpose is in law the act and deed of each of such persons." These instructions are not in conflict but instead each complements and explains the other so that together they are in harmony. See Sec. 556.170; State v. Butler, Mo.Sup., 310 S.W.2d 952; State v. Chernick, Mo.Sup., 278 S.W.2d 741. Defendant also says there was no evidence to support these instructions but the facts shown by the evidence, hereinabove stated, constitute ample substantial evidence to support them.

 Assignments 5, 6 and 8 concern the charge under the Habitual Criminal Act; assignment 5 claiming error in permitting the amended information making this charge to be filed at the commencement of the trial, assignment 6 claiming no prior conviction was proved, and assignment 8 based on failure of Instruction 6 to require the jury to fix the punishment. However, the record showed that defendant's counsel had been given notice of the State's intention to file the amended information five days before it was filed and we hold it was proper to permit its filing. See State v. Stumph, Mo.Sup., 349 S.W.2d 954, 955; State v. Wilson, Mo.Sup., 349 S.W.2d 934, 936. As to assignment 8, the purpose of the amended Habitual Criminal Act (Laws 1959, Senate Bill 117) was to prevent the criminal record of the defendant from being presented to the jury when he did not testify. Therefore, the court fixes punishment, when the Act applies, and it is well settled that this is valid and proper procedure. State v. Brownridge, Mo.Sup., 353 S.W.2d 715; State v. Donnell, Mo.Sup., 351 S.W.2d 775; State v. James, Mo.Sup., 347 S.W.2d 211; State v. Wolfe, Mo.Sup., 343 S.W.2d 10, certiorari denied 366 U.S. 953, 81 S.Ct. 1912, 6 L.Ed.2d 1246. Thus assignment 8 must be considered with assignment 6 which is that the State failed to show any prior conviction of defendant. The only evidence produced by the State

on this issue was a "Certified Transcript of Serial Record" of the Department of Corrections showing a complete description of Sterling Hill, Jr., together with two photographs of him and his fingerprint identification record. We have held such records admissible in evidence. State v. Austin, 113 Mo. 538, 544, 21 S.W. 31; State v. Dalton, Mo.Sup., 23 S.W.2d 1, 5; State v. Peterson, Mo.Sup., 305 S.W.2d 695, 697; State v. Romprey, Mo.Sup., 339 S.W.2d 746, 753; State v. Clark, Mo.Sup., 360 S.W.2d 666, 668; see also State v. Worden, 331 Mo. 566, 56 S.W.2d 595, 598, and Sec. 216.040. We consider this sufficient to sustain a finding identifying defendant as the person therein described. See State v. Baugh, Mo.Sup., 323 S.W.2d 685, 691. However, while this also was sufficient to show defendant was received at the penitentiary and was discharged on commutation of a two-year sentence, after serving from October 21, 1957 to December 1, 1958, it did not prove his conviction of an offense making Sec. 556.280 applicable. The record shows his offense "Burglary" and County "Polk," but does not show what court, leaving it indefinite whether his residence was Polk County or whether he was convicted and sentenced in Polk County.

We said in State v. Hagerman, Mo.Sup., 244 S.W.2d 49, 53: "Unquestionably, in prosecutions under the Habitual Criminal Act the records of other convictions and sentences must be properly authenticated and shown, State v. Hendrix, 331 Mo. 658, 56 S.W.2d 76, and the identity of the accused as the person convicted must be established, 24 C.J.S., Criminal Law, § 1962, p. 1157 [now 24B, p. 484], and it is difficult to understand why the state did not so establish these facts as to leave no possible room for objection. However, there is no statute in Missouri prescribing how proof of the former convictions shall be made in a habitual criminal case. The best evidence, of course, is the original record or a duly authenticated copy of the record, plus evidence identifying the accused as the convict, even though such evidence is

not conclusive." As to proof of former conviction, the record of the former conviction is "conclusive of that matter." State v. English, 308 Mo. 695, 274 S.W. 470, 473. Since it appears from the record in evidence most likely that defendant previously was convicted of a felony in a circuit court of this state so that the State promptly can produce the record thereof, and there being no error in the trial of the issue of defendant's guilt herein, we think it not necessary in this case to require an entire new trial, as was done in State v. Young, Mo.Sup., 366 S.W.2d 386, where claimed previous convictions were in another state. Sec. 556.280 requires the issue of prior conviction, sentence and imprisonment to "be heard and determined by the trial judge out of the hearing of the jury" and the findings thereon made and the punishment determined by the judge. The situation herein is similar to one in which sentence has not been pronounced and final judgment entered prior to appeal. See State v. Bledsoe, Mo.Sup., 249 S.W.2d 457, and cases cited, which was remanded for proper procedural steps required for sentencing. It is even more like Wilfong v. Johnston, US CA 9th, 156 F.2d 507, 510, and In re Bonner, 151 U.S. 242, 14 S.Ct. 323, 38 L.Ed. 149, where the conviction was valid but the sentence was void. We have examined the record as required by our Rules 28.02 and 28.08 and find it sufficient with respect to the sufficiency of the information and verdict. Therefore, as said in In re Bonner (14 S.Ct. l. c. 326) : "[W]here the conviction is correct, and the error or excess of jurisdiction has been as stated (in sentencing), there does not seem to be any good reason why jurisdiction of the prisoner should not be reassumed by the court that imposed the sentence, in order that its defect may be corrected." (Parenthetical insertion ours.)

Therefore, the sentence herein is declared void, the judgment is reversed and the cause remanded with directions to the court to cause the defendant to be brought before it to hold a hearing on the issue of former conviction of defendant and if proved to pronounce sentence and judgment against defendant taking all proper procedural steps required therefor by law and the rules of this court but in the alternative if the issue of former conviction be found in favor of defendant to grant him a new trial on all issues.

All concur.