STATE of Missouri,
Plaintiff-Respondent,

v.

Eddie L. CROSBY, Defendant-Appellant.

No. 10489.

Missouri Court of Appeals,
Springfield District.

March 24, 1978.

Eddie L. Crosby, pro se.

John D. Ashcroft, Atty. Gen., Philip M. Koppe, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

Before HOGAN, P. J., and CROW, KENNEDY and BACON, Special Judges.

HOGAN, Presiding Judge.

Defendant Eddie L. Crosby stands convicted of sodomy per os upon the person of a 19-year-old female who was seven months pregnant at the time. A jury has assessed his punishment at imprisonment for a term of six years. He appeals.

The offense was committed in what is consistently described as the "East end" of

Butler, Missouri, during the early morning of June 14, 1975. The pathic, who was separated from her husband, resided with one Williametta Brown, a "middle-aged lady." The pathic began her description of events by saying that "[T]here was a fight that evening." Three neighborhood men were involved. The pathic stood in the "front yard" and observed the fight.

After the fight was over, while the pathic was "standing out in the yard in front of [the] house where [she] lived," two men "picked [her] up." The pathic "thought they was goofing around" and "kept telling them to put [her] down." She "grabbed Williametta's shirt" and the defendant "hit [her] hand away."

The two men did not release the pathic, but "carried [her] over into Charles Wright's house," which was "[r]ight next door." The pathic was "taken into the bedroom" and "maybe a minute or minute and a half after that [defendant] walked through the door and come in." Defendant told the other two men to leave. He then told the pathic "[Y]ou are going to do what I tell you," and thereupon "pushed [the pathic] down on the bed and . . . started to pinch [her] breasts." The pathic told defendant to leave her alone, but defendant replied "just . . . shut up because [she] would have to do what [defendant] said." The pathic was told to remove her clothes. She did so, and the defendant struck her "pretty hard" on the side of the neck, dazing her momentarily. The pathic thereupon testified:

\*     \*     \*     \*     \*     \*

"A. I just started crying. I told him, 'Just let me go home,' so, anyway, he had put his left knee on my left arm and his right knee up above my head, and he—

\*     \*     \*     \*     \*     \*

Q. All right. What happened then? A. So, anyway, he had taken and unzipped his pants and took his male organ out and put it in my mouth and he was still pinching my breasts at the time.

\*     \*     \*     \*     \*     \*

Q. Now, you say he then placed his organ into your mouth, is that right? A. Yes.

Q. What did you do at this point? A. I didn't do anything. I couldn't. I couldn't do anything.

Q. You didn't try to bite or anything like that? A. I never did think of it. I was so scared I didn't know what to do.

Q. How long did this go on? A. It wasn't very long after that that he had reached a climax.

Q. He did? A. Yes, he did.

Q. What did he do then? A. He got up and he said, 'Now, Mark is going to come in and you do as he says. If you don't, I will be right outside the door.'

Q. Then he left? A. Yes."

Section 563.230, RSMo (1969),[1] which defines and denounces the crime of which defendant was convicted, reads:

"[E]very person who shall be convicted of the detestable and abominable crime against nature, committed with mankind or with beast, with the sexual organs or with the mouth, shall be punished by imprisonment in the penitentiary not less than two years."

■ This statute, though it is couched in common law terms, prohibits all deviate or aberrant acts of copulation, provided some degree of penetration is shown, and penetration may be proved circumstantially. *State v. Pettijohn,* 541 S.W.2d 74, 77–79[4][5][6] (Mo.App.1976). On appeal after conviction, the State is entitled to have the evidence considered in the light most favorable to the result reached, and is entitled to the benefit of all reasonable inferences fairly deducible from all the evidence. *State v. Petrechko,* 486 S.W.2d 217, 218[1] (Mo.1972). So considered, there is direct evidence of penetration of defendant's penis into the pathic's mouth, and the proof is sufficient to sustain the judgment of conviction. *State v. Hubbard,* 295 S.W. 788, 790[5] (Mo. 1927).

■ We observe from examining the transcript that the jury's verdict was re-

---

1. All references to statutes and rules are to this revision, V.A.M.S. and V.A.M.R.

turned on March 19, 1976. A motion for new trial was filed, but it was not filed until March 31. Rule 27.20(a) mandatorily requires that a motion for new trial be filed before the entry of judgment and within ten days after the verdict is returned, subject to the trial court's power to extend the period for filing an additional 30 days. There is no indication in the record that defendant requested, or that the trial court granted any extension of time. Neither the State nor this court can waive the mandatory requirements of Rule 27.20(a); we must hold that the motion filed is a nullity and preserves nothing for review. *State v. Howard,* 476 S.W.2d 587, 588 (Mo.1972); *State v. White,* 439 S.W.2d 752, 753[1] (Mo. 1969); *State v. Nelson,* 526 S.W.2d 56, 57[1] (Mo.App.1975).

■ Apparently recognizing the narrow scope of our review, defendant contents himself with the assertion of one ground of error, arguing that we should consider it as plain error pursuant to the provisions of Rule 27.20(c).[2] The point, as briefed, is that the trial court committed plain error in allowing the pathic to testify to other separate, distinct offenses committed by the defendant prior to June 14, 1975. The rule invoked by the defendant is very elementary, and may be broadly stated thus: the prosecution may not show the commission of other, distinct criminal acts by the accused in aid of the proof that he is guilty of the crime charged. See, e. g., *State v. Shumate,* 478 S.W.2d 328, 330[2] (Mo.1972); *State v. Spinks,* 344 Mo. 105, 112, 125 S.W.2d 60, 63–64[3] (Mo.1939); and see generally McCormick, Evidence, § 157, p. 327 (1st ed. 1954). Nevertheless, this general rule is subject to a good many exceptions. When the proof of other offenses may tend to establish motive, or intent, or absence of accident or mistake, or identity of the defendant, or a common scheme or plan embracing the commission of separate similar offenses so interrelated that proof of one tends to establish the other, then evidence tending to show the commission of other, distinct offenses may be received. *State v. Shumate, supra,* 478 S.W.2d at 330; *State v. Kornegger,* 363 Mo. 968, 975, 255 S.W.2d 765, 768[7] (Mo.1953).

■ In this instance, the evidence complained of was that the pathic had seen the defendant on three prior occasions. On the first two occasions, she had seen the defendant while she was walking along a "path" which she used as a shortcut. On another occasion, when the pathic was living nearby but in different quarters, she started to enter the trailer where she lived with a female companion. Defendant was sitting in the "doorway" of the trailer. He moved to allow the companion to enter, but as the pathic " . . . was fixing to go up [the steps] [defendant] kicked [her] in the stomach and knocked [her] backwards."

The effect of this evidence must be considered in context. The defendant was not one of the men who carried the pathic from the scene of the fight to an adjoining house, and there was, in fact, evidence that the pathic was sexually assaulted by two other men after the defendant committed his sodomitic act upon her person. There was evidence that the neighborhood, called the "east end," was poorly illuminated—"street lights at about every corner." The offense was committed in a room where the lights had been extinguished. The only light "was lights coming through the window from the street light." The whole sodomitic episode was rather brief. Given the detailed circumstances, the identity of the defendant was clearly in issue, the evidence complained of was properly received to establish the defendant's identity, and the trial court did not err, much less err "plainly" in receiving it.

The evidence is ample to support the judgment; the defendant's sole point on appeal is wholly without merit, and accordingly the judgment is in all respects affirmed.

All of the Judges concur.

2. Which reads: " . . . (c) [P]lain errors affecting substantial rights may be considered . . . on appeal, in the discretion of the court, though not raised in the trial court or preserved for review, or defectively raised or preserved, when the court deems that manifest injustice or miscarriage of justice has resulted therefrom."