THE STATE v. BURKE et al., Appellants.

Division Two, June 26, 1899.

1. **Gambling**: INDICTMENT: OFFENSE WITHIN AND BEYOND THIS STATE. An indictment which charged that defendants "did wager on the results of contests which were to take place within and beyond the limits of this State," does not charge an offense under a statute which prohibits any persons making a wager on the result of a contest to take place within or beyond the limits of the State.

2. ———: ———: VOID FOR WANT OF PARTICULARITY. An indictment which charged that defendants "did unlawfully record and register, by mechanical and other means, divers and sundry bets and wagers with persons to the grand jury unknown," is insufficient for want of particularity, as it does not allege that the mechanical and other means were unknown, and hence should have alleged them with particularity.

3. ———: ———: BOOK-MAKING AND AUCTION POOLS: NOT DEFINED. An indictment which charges defendant with engaging in selling auction pools and book-making is insufficient under a statute which prohibits "pool selling and book-making," as failing to allege the acts constituting book-making and pool selling.

4. ———: ———: TWO OFFENSES: VERDICT. Where the indictment charges more than one offense, a verdict finding defendant guilty, without specifying of which offense, is insufficient to support a judgment of conviction.

*Appeal from St. Louis County Circuit Court.*—HON. RUDOLPH HIRZEL, Judge.

REVERSED AND DEFENDANTS DISCHARGED.

MORTON JOURDAN for appellants.

(1) The indictment in this case attempts to charge the commission of four separate and distinct crimes: recording bets and wagers; registering bets and wagers; selling auction pools and engaging in book-making. The judgment recites

that the defendants have been found guilty as charged in the indictment. Of what offense have they been convicted? A conviction for recording bets and wagers can not be upheld because those two crimes were omitted from the title of the act. A conviction for the crime of pool-selling can not be sustained, for not a word of testimony would warrant it. The alleged crime of book-making can not be supported, for the reason that the testimony in this case shows that this offense was not committed. Hence the defendants may yet, after judgment, inquire of what crime have they been charged and found guilty? (2) It is impossible to tell from this indictment whether the defendants are charged with committing these crimes upon horse races run within the State or run without the State. (3) The finding (verdict) and judgment is that the defendants were guilty as charged in the indictment. Under this alleged indictment the defendants had the right to have the court declare of which particular offense they were guilty. They do not know, and can not possibly know, which crime, in the judgment of the court, they committed. The court was asked by declarations of law Nos. 20, 21, and 22 to declare the offense of which the defendants, if guilty, were convicted, and this the court declined to do by refusing these declarations of law.

EDWARD C. CROW, Attorney-General, and SAM B. JEF-FRIES, Assistant Attorney-General, for the State.

(1) It is a very easy matter to observe from reading the indictment the nature and cause of the accusation; and the indictment and judgment sufficiently informs the defendants of the offense of which they have been convicted. (2) Conceding that the indictment is bad on account of duplicity, defendants can not at this late day take advantage of it in that regard. Their objection should have been urged before the verdict was rendered against them; in other words, the

duplicity therein, if any there be, is cured by the verdict. 1 Whart. Crim. Law, sec. 395; State v. Fox, 148 Mo. 517; State v. Armstrong, 106 Mo. 395; St. Louis v. Weitzel, 130 Mo. 613; 1 Bishop's Crim. Proc., secs. 442-443; Wharton's Crim. Plead., secs. 255-760; Com. v. Tuck, 20 Pick. 356; People v. Burgess, 35 Cal. 152; Scruggs v. State, 66 Tenn. 38.

SHERWOOD, J.—The defendants, nine in number, were all found guilty "as charged in the indictment herein," and fined each in the sum of $1,000.

The grand jurors for the State of Missouri, now here in court, duly impaneled, sworn and charged to inquire within and for the body of the county of St. Louis and State of Missouri, upon their oath present and charge that Richard R. Burke, Edward Fitzgerald, William Dunn, Charles Mason, Isaac Cohen, Michael Healey, William Mathews, John Cohick, Joseph Donegan, Joseph Daily, Curley Britt, David Sabine, Burt Kreler and Howard Ellis, on the 4th day of February, 1899, at said county of St. Louis, in said State of Missouri, then and there did unlawfully, willfully, injuriously, wickedly and knowingly record and register by mechanical and other means, diverse and sundry bets and wagers and sell auction pools and engage in book-making with divers and sundry persons to said grand jury unknown, by and through certain devices, books, instruments and contrivances, to the said grand jurors unknown, upon the result of certain trials and contests of skill, speed, and power of endurance of man and beast which was to take place within and beyond the limits of this State, to wit, at the city of New Orleans in the State of Louisiana, without then and there first having obtained a license from the State Auditor so to do [such licenses stating that the contest upon which said pools, books and wagers made were actually to take place upon the race courses and fair grounds where they, the said Richard R. Burke, Edward Fitzgerald, William Dunn,

State v. Burke.

Charles Mason, Isaac Cohen, Michael Healey, William Mathews, John Cohick, Joseph Donegan, Joseph Dailey, Curley Britt, David Sabine, Burt Kreler and Howard Ellis, desired to carry on their business, the character of the business they the said Richard R. Burke, Edward Fitzgerald, William Dunn, Charles Mason, Isaac Cohen, Michael Healey, William Mathews, John Cohick, Joseph Dailey, Curley Britt, David Sabine, Burt Kreler and Howard Ellis, then and there desired to conduct, the length of time during which they desired to carry on their business—or any other legal authority so to do.] Contrary to the form of the statute in such cases made and provided against the peace and dignity of the State."

That portion of the indictment within brackets will not be considered in the remarks which we shall make touching the sufficiency of that instrument, inasmuch as that bracketed portion has no proper place nor function to perform in the indictment.

"An Act to punish book-making and pool-selling by unlicensed persons, to provide for the issuance of such a license, and to dispose of the funds arising from such license," Laws 1897, p. 100, is the statute upon which the indictment in question is drawn. Section 1 of that statute, so far as necessary to quote it, is the following:

"Section 1. No person or persons shall record or register, by mechanical or other means, bets or wagers, or sell auction pools, or engage in book-making by or through any device, book, instrument or contrivance whatever, upon the result of any trial or contest of skill, speed or power of endurance of man or beast which is to take place within or beyond the limits of this State without first having obtained a license so to do as herein provided; . . . . Any person violating any of the provisions of this section shall be deemed guilty of a misdemeanor, and on conviction thereof shall be punished by imprisonment in the county jail for a period of

one year, or a fine of one thousand dollars, or by both such fine and imprisonment."

The motion in arrest challenges the sufficiency of this indictment. But under our former rulings, advantage can be taken of serious and substantial defects in an indictment in this court for the first time, or by this court of its own motion. [State v. Meyers, 99 Mo. 107, and cases cited, and subsequent cases.] .

This indictment is bad in many respects, of which a few will now be noted.

The statute speaks of "bets or wagers," etc., etc., "whatever, upon the result of any trial or contest of skill, speed or power or endurance of man or beast which is to take place within or beyond the limits of this State."

Such bets or wagers, etc., are prohibited upon the result, etc., "within or beyond the limits of this State." If within the limits of this State, it is an offense, and it is equally an offense if beyond the limits of this State.

But the draftsman of the indictment, not content to follow the statute, charges an offense upon a result "which was to take place both within and beyond the limits of this State."

Such an offense is unknown to the statute, and therefore no offense and non-punishable. Touching this subject, an eminent author says: "Meaning of Strict Interpretation.— Such statutes are to reach no further in meaning than their words; no person is to be made subject to them by implication, and all doubts concerning their interpretation are to preponderate in favor of the accused. Only those transactions are covered by them which are within both their spirit and their letter." [Bish. Stat. Crimes, (2 Ed.), sec. 194.]

Now, looking again at the statute, we find that the acts mentioned in the section heretofore quoted, are made to turn and their criminality to depend "upon the result of any trial, etc., which is to take place within or beyond the limits of this

State." Under the express terms of the statute, therefore, unless the bets or wagers or the selling of the auction pools or the book-making, etc., etc., are based upon the result, etc., to take place either within or else beyond the limits of this State, there is no offense committed; inasmuch as the indictment does not charge that the result, etc., was to take place in any one of the two localities specified in the statute, it necessarily follows that the indictment charges no offense and is bad throughout. As Lord MANSFIELD observed in Browning v. Morris, 2 Cowp. 790, "the statute itself has marked the criminal."

The persons on whom the penalties are to fall, and in what circumstances, are thus designated by the statute. [Howell v. Stewart, 54 Mo. 400.]

In continuation of the subject of the strict interpretation given to criminal statues, and citing cases illustrating such strictness, the author already quoted observes:

"In slightly different language, though a case of this sort is fully within the mischief to be remedied, and is even of the same class and within the same reason as other cases enumerated in the statute, construction will not be permitted to bring it within the staute unless it is also within the statutory words. Thus, under words making punishable those who, with intent to commit any felony, 'shall in the nighttime enter without breaking, or in the daytime break and enter, any warehouse,' an entry in the night by breaking, was held not to be included.

"It being forbidden to set up a faro-table 'in any dwelling house, outhouse or place occupied by any tavern keeper, retailer of wine, spirituous liquors, beer, or cider,' one in a locality not in terms mentioned—as, for instance, in a house used solely for this purpose—was held not to be prohibited.

. . . .

"By a former Georgia statute, 'if any slave, free negro, Indian,' etc., shall do certain things mentioned, 'any such

slave or slaves, and his and their accomplices,' shall suffer death. This was held not to apply to a free negro, who was mentioned only in the first clause. . . .

"Intoxicating liquor was forbidden to be sold at a 'booth, tent, wagon, huckster's shop, or other place erected, brought, kept, continued, or maintained within the distance afore-said.' And it was held, that a sale within the prohibited distance was no offense, unless made at one of the specified places." [Bishop, Stat. Crim. (2 Ed.), secs. 220, 222 and 223.]

But for divers other reasons the indictment is bad.

There are cases where it will do to follow and simply employ the language of the statute, which creates and defines a new crime, and prescribes its punishment.

WHARTON, treating of this subject, says:

"On the general principles of common law pleading, it may be said that it is sufficient to frame the indictment in the words of the statute, in all cases where the statute so far individuates the offense that the offender has proper notice, from the mere adoption of the statutory terms, what the offense he is to be tried for really is. But in no other case is it sufficient to follow the words of the statute. It is no more allowable, under a satutory charge, to put the defendant on trial without specification of the offense than it would be under a common law charge." [Whart., Cr. Pl. and Prac. (9 Ed.), sec. 220.] To the same effect see, Heard on Crim. Pl., pp. 161, 162, 163, 165, 166; Stuer v. State, 59 Wis. 472; State v. Gardner, 28 Mo. 90; State v. Rochforde, 52 Mo. 199; U. S. v. Carll, 105 U. S. 611; U. S. v. Cruikshank, 92 U. S. 542; 1 Arch. Cr. Proc, star p. 88; 2 Hawk. P. C., ch. 25, sec. 11.]

And BRET, L. J., in Broadlaugh v. Queen, E. L. R. 3 Q. B. D. 607; s. c., 3 Am. Crim. Rep. 464, says: "Every pleading, civil or criminal, must contain allegations of the

existence of all the facts necessary to support the charge or defense set up by such pleading."

ARCHIBOLD says: "The indictment must state all the facts and circumstances comprised in the definition of the offense, by the rule of the common law or statute on which the indictment is founded. And these must be stated with clearness and certainty, otherwise the indictment will be bad. The principal rule, as to the certainty required in the indictment, may, I think, be correctly laid down thus: That where the definition of an offense, whether by a rule of common law or by statute, includes generic terms (as it necessarily must), it is not sufficient that the indictment should charge the offense in the same generic terms as in the definition, but it must state the species—it must descend to particulars." [1 Arch. Crim. Proc., star p. 88.] "Certainty may be defined to be a clear and distinct setting down of facts, so that they may be understood both by the party who is to answer the matters stated against him, the counsel who are to argue them, the jury who are to decide upon their existence, and the court who are the judges of the law arising out of them." [Rex v. Griffith, 3 Mo. 201.]

And where the statute states its definitions and prohibitions in general terms, there the indictment must make specific what the statute makes general. "A statute having made it punishable for one not a 'qualified voter' to vote at an election, a charge of the offense simply in these words was adjudged inadequate. For whether or not the defendant is such voter is a deduction of the law from the facts; and though a statute may define an offense by its legal result, not so an indictment. It must state the facts whence the result comes; thus notifying the defendant of what he must meet, and putting upon the record a proper case for the court's adjudication." [1 Bishop New Crim. Proc., sec. 627.]

"A statute on creating a new offense describes it by a popular name. It is made indictable, for instance, to obtain

goods by 'falsely personating' another. But no one would maintain that it is enough to charge the defendant with 'falsely personating another.' So far from this being the case, the indictment would not be good unless it stated the kind of personation, and the person on whom the personation took effect. An act of Congress to take another illustration, makes it indictable to 'make a revolt' but under this act it has been held necessary to specify what the revolt is. 'Fraud' in elections, in a Pennsylvania statute, is made indictable; but the indictment must set out what the fraud is. It is not enough to say that the defendant 'attempted' an offense, though this is all that the statute says; the particulars of the attempt must be given." [Whart. Crim. Plead. & Prac. (9 Ed.), sec. 221.]

The indictment under review does not make specific what the statute makes general; it does not descend into particulars, on the contrary it indulges in a series of legal conclusions; it alleges: "At said county of St. Louis, in said State of Missouri, then and there did unlawfully, willfully, injuriously, wickedly and knowingly record and register by mechanical and other means, divers and sundry bets and wagers, and sell auction pools and engage in book-making with divers and sundry persons to said grand jurors unknown, by and through certain devices, books, instruments and contrivances, to the said grand jurors unknown, upon the result of certain trials and contests of skill, speed and power of endurance of man and beast which was to take place within and beyond the limits of this State." It should have described what were the mechanical and other means employed to record and register the divers and sundry bets and wagers, and stated with whom the bets, etc., were made, because these means, mechanical and otherwise, are not alleged to be the grand jurors unknown; it is only the divers and sundry persons to whom the auction pools were sold and with whom defendants engaged in book-making, that are alleged to be

unknown.  Nor is "book-making" described in order to show by facts stated whether an infraction of the law in that particular had occurred.  And the indictment, as last quoted, winds up by alleging "upon the result of certain trials and contests of skill, speed and power of endurance of man and beast," etc.

The matters just quoted are not alleged to be unknown to the grand jurors, and therefore no excuse is given for their non-statement.  What were those trials and in what did they consist?  Were they such as the statute forbids?  Surely defendants had a right to know this in order to prepare for their defense.

Surely the court had to have them set forth in order to determine whether an offense against the statute had been committed.  The language of PORTER, J., is very apropos this point, where he says:  "In the spirit of that principle which presumes innocence until guilt be established, we infer that what is not charged in an indictment does not exist, and it is the business of the pleader to exclude, by proper averments, the conclusions to which the accused is thus entitled." [Mears v. Com., 2 Grant (Pa.) 385.]

And just here it is proper to remark that although in certain circumstances pointed out in State v. Stowe, 132 Mo. 199, and cases cited, it is permissible to allege that certain matters are unknown to the grand jury, yet it is not always permissible to make this excuse.

An omission from an indictment of what is a vitally essential element of the offense intended to be justified by such an excuse, can not be thus justified.  [Com. v. Clancy, 7 Allen, 537; Wallace v. People, 27 Ill. 45.]  In Wallace's case, the indictment expressly alleged "that the substance of the certificate (on which the indictment was grounded) was known to the grand jurors."  And the indictment was held fatally defective.

On this topic BISHOP thus remarks: "As already seen, this allegation of unknown, will not excuse the setting out of the substance of the essentials. So that if the grand jury can not state what is necessary for the defendant to know in making his defense, they can not indict him." [1 Bishop New Crim. Proc., sec. 547.]

Moreover, the indictment is bad because it does not inform defendants of the "nature and cause of the accusation" against them, and in this transgresses section 22 of our Bill of Rights.

On this question our decisions respecting the constitutional invalidity of section 3826, Revised Statutes, 1889, and the form of indictment which it sanctions, are directly in point. It is only necessary to cite them. [State v. Terry, 109 Mo. 601; State v. Fleming, 117 Mo. 377; State v. Cameron, 117 Mo. 371; State v. Levy, 119 Mo. 434. See also State v. Krueger, 134 Mo. 262.]

As before stated, the verdict of the court found defendants "guilty as charged in the indictment herein." Considering the utter insufficiency and vexatious indefiniteness of the indictment as heretofore pointed out, this verdict was no doubt the best the trial court could do; but we have determined, in State v. Pierce, 136 Mo. 34, that where an indictment contained two counts, one for forgery of a written instrument, and the second for uttering the same, that a verdict, "We the jury find the defendant guilty and assess his punishment at two years in the penitentiary," was wholly insufficient and not responsive to the issues joined, and besides would not enable the defendant to successfully plead *auterfois convict* or *auterfois acquit,* or to secure a pardon, because it would be impossible to tell of what he was convicted.

If such remarks were applicable to that verdict, then *a fortiori* so to the one at bar.

We have not discussed the various constitutional ques-tions which were raised in the court below, because it will be time enough to do that when we have an indictment to deal with that does not so closely resemble the condition of the earth when it "was without form and void." [State v. Hathaway, 106 Mo. 236, and other cases.]

As the result of the foregoing views, we reverse the judgment and discharge the defendants. All concur.