HOLLINGSWORTH, DALTON and LEEDY; JJ., and CONKLING, C. J., concur in result.

HYDE and TIPTON, JJ., dissent.

STATE v. SAUSSELE.

No. 43625.

Supreme Court of Missouri.
En Banc.

March 8, 1954.

Morris A. Shenker, Sidney M. Glazer, St. Louis, for appellant.

John M. Dalton, Atty. Gen., John S. Phillips, Asst. Atty. Gen., for respondent.

HYDE, Presiding Judge.

Defendant was found guilty of a felony on the following verdict: "We, the Jury in the above entitled cause, find the defendant guilty of occupying premises and keeping and using therein devices for the purpose of recording bets on horse races and assess his punishment at Two Thousand Five Hundred ($2,500.00) Dollars fine." The Court reduced the fine in accordance with Section 546.500. Statutory references are to RSMo and V.A.M.S. Defendant was sentenced to pay a fine of $1,000, and has appealed. He contends that both the indictment and the verdict are fatally defective.

The indictment was in two counts but Count One was dismissed. Count Two, which was based on Section 563.360, was as follows: "That defendant Theodore O. Saussele, on the 31st day of October, one thousand nine hundred and fifty-one at the City of St. Louis aforesaid, did occupy the building or a part of the building located

at 2001 Park Avenue, in the said City and did unlawfully and wilfully, knowingly and feloniously keep, exhibit, use and employ therein certain devices and apparatus, to-wit: books, sheets, racing charts, betting tabs, form sheets and other paraphernalia for the purpose of recording bets and wagers upon the results of trials and contests of speed or power of endurance of horses, which said contests were to be made or to take place at various tracks without this state, contrary to the form of the Statute in such case made and provided, and against the peace and dignity of the State."

Section 563.360 provides, in part, thus: "Any person who occupies any room, shed, tenement, tent, booth, building or enclosure, or any part thereof, in this state, with any book, sheet, blackboard, instrument or device or substance for the purpose of recording or registering bets or wagers or selling any pools upon the result of any trial or contest of skill, speed or power of endurance of man or beast, which is to be made or to take place within or without this state; * * * shall, on conviction, be adjudged guilty of a felony."

■ Defendant claims the indictment fails to charge an offense because it pleads legal conclusions and does not particularize the offense, citing State v. Burke, 151 Mo. 136, 52 S.W. 226. The indictment herein follows the language of the statute, and as recognized in the Burke case, 151 Mo., loc. cit. 142, 52 S.W. loc. cit. 227, the rule is "that it is sufficient to charge 'statutory offenses in substantially the language of the statutes creating them, when the statute in question sets forth the constituent elements of the offense'; and that 'it is sufficient to frame the indictment in the words of the statute in all cases when the statute so far individuates the offense that the offender has proper notice, from the mere adoption of statutory terms, what the offense he is to be tried for really is.'" State v. Lundry, 361 Mo. 156, 233 S.W.2d 734, 736. See also cases under Indictment and Information ■■■■ West's Missouri Digest. However, the indictment herein does more

than state statutory language. In the Burke case, which was under a different statute, the indictment did not describe the "means employed to record and register the divers and sundry bets" [151 Mo. 136, 52 S.W. 228] alleged to have been made. The indictment herein does describe the devices alleged herein to have been kept for recording bets, namely: "books, sheets, racing charts, betting tabs, form sheets." Moreover, it specified these were for the purpose of recording bets "upon the results of trials and contests of speed or power of endurance of horses," at tracks "without this state," which was not true of the indictment in the Burke case. Since Count One of the indictment was dismissed, we do not consider defendant's contention as to the repeal of the statute upon which it was based. We hold the indictment herein sufficient.

■ As to the verdict, defendant says it is defective as a special verdict because it does not find all of the essential elements of the offense charged and that it is defective as a general verdict because it does not state upon which count the defendant was found guilty. However, the first count of the indictment was dismissed and the Court said: "Inasmuch as no reference to counts was made in the presence of this jury either during the opening statement or any other time, I see no need to make mention of it in the instructions." There was no objection or request for any instruction concerning counts. Therefore, there were no counts for the jury to specify, and a verdict without any specification of counts was proper.

It is true that this verdict is similar to those which have been called special verdicts in the following cases: State v. De Witt, 186 Mo. 61, 84 S.W. 956; State v. Cronin, 189 Mo. 663, 88 S.W. 604; State v. Modlin, 197 Mo. 376, 95 S.W. 345; State v. Griffin, 278 Mo. 436, 212 S.W. 877; State v. Griffin, Mo.Sup., 228 S.W. 800; State v. Knoch, Mo.Sup., 14 S.W.2d 424; State v. Thompson, Mo.Sup., 29 S.W.2d 67; State v. Mitnick, 339 Mo. 127, 96 S.W.2d 43; State v. Birkner, Mo.Sup., 229 S.W.2d 674. Nevertheless, these were not true

special verdicts. Bishop's New Criminal Procedure, 2d Ed., Sec. 1006, defines a special verdict as "one which sets out the facts, leaving the Court to draw therefrom the conclusion of law." See also Wharton's Criminal Procedure, 10th Ed., Sec. 1678; 23 C.J.S., Criminal Law, § 1399, p. 1078. Bishop also says, of a special verdict, that "after stating the facts, it finds the defendant guilty if such is the Court's conclusion of the law upon them; but if the Court holds otherwise, not guilty." See form of special verdict set out in Commonwealth v. Eichelberger, 119 Pa. 254, 13 A. 422, 4 Am.St. 642. We have said: "It is always within the province of the jury to return a special verdict finding the facts constituting the offense, and in such case the verdict must find all the essential elements of the offense, or it will be invalid." State v. Bishop, 231 Mo. 411, 133 S.W. 33, 34, on authority of Bishop's New Criminal Procedure and State v. De Witt, supra; see also State v. Knoch, Mo.Sup., 14 S.W.2d 424. We have no statutory provisions for special verdicts in criminal cases and the whole matter of form of verdicts seems to be left to common law procedure, except the requirements for stating offenses of different degrees and fixing punishment. See Secs. 546.390–546.420, Sup.Ct. Rules 27.01–27.02. Certainly, it does not seem reasonable to believe that the juries in the above cited cases intended to return a true common law special verdict, finding only the facts of the case and leaving the Court to draw the conclusions of law from these facts as to whether or not the defendant was guilty, because in all of them the jury unconditionally found the defendant guilty and fixed his punishment.

 What it seems the verdicts in those cases really attempted to do was not to make a special finding of the facts for the Court to pass on but instead to describe the offense of which the jury intended to find the defendant guilty; and, of course this must be done in a way that is definite, certain and responsive to the charge upon which the defendant was tried. See State v. Reeves, 276 Mo. 339, 208 S.W. 87. The best practice and the surest way to prevent a verdict from being construed as other than a general verdict is to add the words "as charged in the indictment" or "information." However, we have consistently held that those words are not essential to a general verdict. State v. Carroll, 288 Mo. 392, 232 S.W. 699; State v. Bacey, Mo.Sup., 267 S.W. 809; State v. Baublits, 324 Mo. 1199, 27 S.W.2d 16; State v. Dimmick, 331 Mo. 240, 53 S.W.2d 262; State v. Wright, 342 Mo. 58, 112 S.W.2d 571; State v. Ward, 356 Mo. 499, 202 S.W.2d 46. The Missouri cases hereinabove cited, denominating certain verdicts as special verdicts, actually seem to have been decided on the basis of definiteness, certainty and responsiveness of the verdict. See Webber v. State, 10 Mo. 4, cited in the DeWitt case, supra, 186 Mo., loc. cit 68, 84 S.W 956. Of course, a verdict that does not refer to the indictment in its description of the offense, of which it finds the defendant guilty, must be responsive to the charge made by the indictment and certain as to the offense intended; or, as the cases say, a verdict must contain either in itself or by reference to the indictment all of the essentials of the crime. See State v. DeWitt, supra, 186 Mo., loc. cit. 69, 84 S.W. 956. However, we have also said: "It is a wholesome precept that verdicts should be given a reasonable intendment and a like construction, and are not to be avoided unless it is evident they will work manifest injustice." State v. Jordan, 285 Mo. 62, 225 S.W. 905, 907; State v. Cutter, 318 Mo. 687, 1 S.W.2d 96; State v. Carter, Mo.Sup. 64 S.W.2d 687. The standard stated in State v. Jordan, 285 Mo., loc. cit. 73, 225 S.W. loc cit. 907 is: the verdict must be sufficiently definite and certain "that upon the entry of a judgment thereon it would have constituted a bar to a further prosecution * * * for the same offense".

 Measured by these rulings we think the verdict herein was definite, certain and responsive. Defendant's complaint is that the verdict refers to "premises" instead of the building specified; that it does not state defendant knowingly did the acts charged; and that it uses the word "devices" instead of specifying any of the

things referred to as devices in the indictment. We think this verdict was sufficient in these respects and definite and certain enough so that an entry of judgment thereon would constitute a bar to a further prosecution of defendant for the same offense. The only reasonable construction of "premises" is the tavern as there was no dispute in the evidence about its location or where defendant was found. As hereinafter shown, defendant has misconstrued the word "devices." The word "knowingly" is not in the part of the statute under which defendant was charged, and although criminal intent must appear in criminal cases, it is not always essential that it be stated in the verdict when the acts constituting the offense are stated, and intent is a necessary implication from the facts found. See 23 C.J.S., Criminal Law, § 1399, p. 1079. The verdict herein did make a specific finding of purpose (using devices for the purpose of recording bets) which certainly means "knowingly." We hold that the verdict herein is sufficient and that there is no error in the record proper.

The State's evidence showed that defendant operated a tavern at 2001 Park Avenue in St. Louis. (The licenses were in his wife's name and she claimed to be the owner.) The bar was on the east side of the room and there was a small partitioned room at the north end of the bar in which there was a telephone. Detective Bingham went to the tavern several times during October 1951. On his first visit, he observed men standing at the rear of the room, with defendant in the group, talking about horse racing and looking at a scratch sheet known as the National Turf program. On October 19th, he saw defendant write something on a small piece of paper and go to the small room and use the telephone. He observed similar incidents on other days. On October 22nd, he saw a man give defendant a ten dollar bill and ask him to place a bet on a horse. Defendant placed the bill in a box back of the bar and returned eight dollars to the man. On October 31st, Detective Bingham entered the tavern about 3:30 P. M. and took a seat at the bar. Two men, later arrested, were seated there with scratch sheets in front of them, talking to defendant behind the bar about race horses and tracks. Defendant went back to the small room and used the telephone. Soon after that Captain Wren, Detective Leuther and three other officers of the gambling squad of the St. Louis Police entered the tavern with a search warrant. One of the men at the bar attempted to tear up his scratch sheet but Detective Bingham took it from him. The officers also took from defendant's pockets a racing form, a scratch sheet, a memorandum of bets owed by various persons, and a bet sheet upon which 47 bets were listed. They found two other bet sheets on a beer case near the bar, on one of which 21 bets were listed and on the other 23. They also found another bet sheet in a cigar box on the cash register, which was wrapped around twelve one dollar bills. There were 48 bets listed on it.

Captain Wren questioned defendant at the time of his arrest and defendant said "it was his tavern, that he operated the tavern" although the licenses were in his wife's name. He also said defendant told him "that he run the handbook himself and that there was nobody else connected with the handbook other than himself." Defendant also told Captain Wren that the bet sheet wrapped around the twelve one dollar bills "were records of the bets that he had taken in that day" and that the money "was part of the bet money he handled." Detective Bingham testified that defendant said the bet sheets that came from the beer cases were his and "identified this as the sheet he lists bets on." He also said: "The question was put to him by the Captain in my presence asking him about the paraphernalia, at which time he stated, 'Yes, I take full responsibility.'"

 Defendant alleges error in permitting Detective Bingham to testify to matters occurring previous to October 31, 1951, the date specified in the indictment. The Court overruled defendant's objections on the ground that the witnesses observations of things happening on the premises on previous days were admissible "as pos-

sibly bearing on such issues as the intent and purpose as might be involved in the charge." Defendant cites State v. Preslar, 316 Mo. 144, 290 S.W. 142, 144; holding, on a charge of selling moonshine whiskey, that it was error to permit the state to offer evidence in regard to other alleged sales of whiskey, saying that the facts were such that the defendant was bound to know the nature and character of his act, and therefore, proof of other offenses was inadmissible to show intent. The Court also said: "In this class of cases, the question of intent is not material" because if defendant sold whiskey in violation of the prohibition law he is guilty regardless of his intent. Defendant also cites State v. Fenley, 309 Mo. 534, 275 S.W. 41, (a similar case) and State v. Barker, Mo.Sup., 249 S.W. 75. We think that the matters Detective Bingham observed were in the nature of circumstantial evidence tending to show purpose as to the particular transactions involved, namely, occupying the premises with devices for the purpose of recording bets on the date specified; and also to identify defendant with the recording charged on the date specified. We hold that this was within the rule stated in State v. Kornegger, Mo.Sup., 255 S.W.2d 765, loc. cit. 768, as follows: "Where the proof of other offenses may tend to establish motive, or intent, or absence of accident or mistake, or identity of the defendant, or a common scheme or plan embracing the commission of separate similar offenses so interrelated to each other that proof of one tends to establish the other, such other offenses are widely held under these circumstances to be admissible in proof." See also State v. Hepperman, 349 Mo. 681, 162 S.W.2d 878; State v. Nienaber, 347 Mo. 541, 148 S.W.2d 537; State v. Spinks, 344 Mo. 105, 125 S.W. 2d 60; and State v. King, 342 Mo. 975, 119 S.W.2d 277. The purpose for which the devices involved were kept and used by defendant was an essential element of the case. We find no merit in this assignment and it is overruled.

 Defendant alleges error in refusing a mistrial because of the following

question and answer in the examination of Detective Leuther:

"Q. Officer, what was Saussele's position there? A. He, Saussele runs the tavern, and also runs the handbook."

Defendant says this was a conclusion of the witness on the ultimate issue for the jury. The Court overruled defendant's request because no objection was made to the question before it was answered. Furthermore, Leuther had just testified that he was present when defendant was questioned and was asked what defendant said. Objection was made and sustained on the ground that the corpus delicti had not been established. It is apparent from the record that Leuther was basing his answer on defendant's admissions to the officers. If these were improper at that time in the trial (Leuther being the first witness) they became admissible and were admitted later, in the testimony of the other two officers, when the corpus delicti was abundantly established. Therefore, it could not have been prejudicial and this assignment is overruled.

 Defendant alleges error in permitting the police officers to testify as expert witnesses as to what a handbook is, how it operates, how race track odds are set, what scratch sheets show, what a bookmaker does, the use of the telephone in laying off bets, what devices are used to record bets, and to make interpretations of abbreviations on bet tabs and bet sheets as initials of bettors, designation of various races at specific tracks and the amount and character of the bet. Defendant says this was not a proper subject of expert testimony, invaded the province of the jury and stated definitions which constituted legal opinions. We have carefully read the evidence and find no merit in this assignment. These officers had years of experience on the gambling squad, had participated in many arrests in that field, had discussed these matters with many bookmakers and had also studied material on this subject. We think this was a subject about which jurors who had not participated in this kind of activity would not have the same essential

knowledge and was a proper subject for expert testimony. The officers qualifications were amply shown and their testimony was based upon customs of bookmakers and the usual manner in which they operated. We, therefore, overrule this assignment.

■ Defendant alleges error in refusing an offer of proof of evidence to be given by his witness Orin Rapp. The offer was that Rapp was in the tavern "about fifteen times during October 1951 and at no time did he see any gambling paraphernalia." The Court refused the offer on the grounds that this was testimony of "vague and unrelated nature" and that the papers in evidence as exhibits were kept in defendant's pockets and in other places where they could not have been seen. The State says this is negative evidence which was not relevant and cites 22 C.J.S., Criminal Law, § 643, p. 983, stating that "testimony designed to show that the witness had been unable to discover evidence of accused's guilt is incompetent," and giving other examples of incompetent negative evidence. This offer was confined to gambling paraphernalia and was not connected with any offer of proof of opportunity for observation. It is to be noted that Detective Bingham on his numerous visits, for the purpose of discovering if any such paraphernalia was there, never saw anything more in this respect than to observe defendant writing on pieces of paper. Under the circumstances of this case, we must hold that there was no prejudicial error in refusing this offer of proof.

■ Defendant alleges error in refusing his request for a misdemeanor instruction under Sec. 563.630 (keeping or setting up a common gambling house) or Sec. 563.420 (permitting gaming table, bank or device to be used for gaming.) Defendant was charged of violation of Sec. 563.360 and the evidence supported that charge. The other two statutes are not applicable to the situation herein shown and this assignment is overruled.

■ Defendant alleges error in failing to instruct on the purpose of expert testimony and also says that Instruction No. 1 improperly charged that books and sheets can be gambling devices. Defendant did not request any instruction on expert testimony and, therefore, is in no position to claim error on failure to give such an instruction of a cautionary or explanatory nature. Instruction No. 1 authorized findings that defendant did "employ certain books and sheets for the purpose of recording bets" and "that such books and sheets were devices useful and intended for such purpose." Defendant misinterprets the word "devices", as used in this instruction, as throughout his brief he misinterprets the use of this word in the indictment, verdict and statute, Sec. 563.360, contending that it means mechanical devices for recording bets. It is clear from the statute (specifying book, sheet, blackboard, instrument or device or substance) that it is not so limited. These assignments are without merit and are overruled.

■ Defendant's final claim is that the evidence was insufficient to sustain conviction. Defendant says it was necessary to have evidence of an act of betting on October 31st in order to show the bet sheets were actually used in the tavern on that date and that the mere presence of these objects in the tavern does not establish that fact. However, there was much more in evidence than their mere presence from which all essential elements of the case could be inferred. There was the activity observed by Detective Bingham, the finding of the bet sheets in defendant's pockets, the kind of notations made by defendant on the bet sheets, and the one dollar bills wrapped up in the bet sheet on the bar, all of which was at least sufficient circumstantial evidence to establish the corpus delicti, namely: the act and the criminal agency of the act; that is: someone occupied the premises with such devices for the purpose of recording bets, made criminal conduct by Sec. 563.360. See State v. Price, 361 Mo. 1034, 238 S.W.2d 397. As we therein stated, 238 S.W.2d loc. cit. 399: "But, once evidence other than the defendant's confession shows that the specific crime charged was committed by someone, then

the defendant's confession is admissible and, of course, if believed completes the case." Defendant's admissions were, therefore, admissible and completed the case against him if anything more was necessary. Defendant further argues "there should also be evidence of the running of a race horse some place." While we think there was at least circumstantial evidence to so show, in view of defendant's admissions showing violation of the statute, it is not necessary to discuss this contention.

The judgment is affirmed.

All concur.

Adopted as the opinion of the court en banc.

All concur.